## GRATTIS v. KANSAS CITY, PITTSBURG & GULF RAILROAD COMPANY, Appellant.

### In Banc, January 10, 1900.

1. **Negligence: VICE-PRINCIPAL: TEST.** It is a question of authority to represent the master which determines whether an employee is a vice-principal of his master.

2. ——: ——: DEPARTMENT DOCTRINE. The doctrine of "department service" of employees of the same master, as gathered from the adjudications of this State, is not scientific, nor does it serve to aid in arriving at a just rule of measuring the liability of a company for the injury of a servant. On the contrary it leaves the old rule as to the relation of master and servant still in force, namely, a mixed question of law and fact in every case.

3. ——: FELLOW SERVANTS: CONDUCTOR: FIREMAN. Prima facie, at least, the conductor, engineer and fireman on the same train are fellow servants.

4. ——: ——: ——: STUB SWITCH: SIGNAL. The plaintiff, a fireman, was injured by the derailing of a train due to an open "stub-switch," at a station where trains stopped only when signaled. At a point eighty rods from the switch, the engineer brought the train almost to a stop, and there the fireman notified him that the side track was full of cars and that he could not see the target of the switch. The engineer said, "I am going, I have a signal from the conductor to go on." Again the plaintiff told him he could not see the target, and he replied, "I have a signal from the conductor

and things are apparently all right and I am going." The engineer proceeded, increasing the speed as he went, and as the train neared the switch the plaintiff notified the engineer that the switch was open; he tried to stop the train, but did not succeed, and it ran off the track, turned over, the "pops" were broken and the steam escaped and scalded plaintiff seriously. The rules of the company, in the possession of the fireman and engineer, required: "A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal," and "all signals must be used strictly in accordance with the rules, and trainmen and engineers must keep a constant lookout for signals," and "in all cases of doubt or uncertainty take the safe course and run no risks." *Held,* that the conductor and firemen were fellow servants, and the accident being due to the failure of the engineer to observe the rules of the company and stop his train, and as he and the fireman were fellow servants and as he was not shown to be an incompetent engineer, there was no negligence in the company's employing him, and the fireman can not recover for his injuries.

5. ———: ———: ———: RULES OF COMPANY: CONDUCTOR'S SIGNAL. *Held,* also, that the conductor's signal or order to the engineer to go ahead did not have the effect of waiving or suspending the rules of the company which required the engineer and all trainmen to observe the targets and danger signals at switches, and in case of doubt to stop, the engineer and fireman well knowing of these rules and the conductor's signal not meaning that the engineer was to disregard the rules.

6. ———: ———: ———: ———: NOTICE. Nor can the conductor's order to the engineer to go ahead overcome the express notice of danger given by the fireman to the engineer that the side track was filled with cars which obstructed the view so that he could not see the switch's target.

7. ———: ———: ———: PLAINTIFF'S HELPLESS POSITION. Nor is the company made liable, nor the relation of fellow servant changed, by the fact that the fireman was helpless to stop the engine. He assumed the risk when he entered the employment.

8. ———: SAFE APPLIANCES. The stub-switch was, under the circumstances, a reasonably safe appliance, and the company's failure to place a split or split-spring switch there was not negligence.

Appeal from Newton Circuit Court.—*Hon. J. C. Lamson,* Judge.

REVERSED.

*Trimble & Braley, Benton & Sturgis* and *John A. Eaton* for appellant.

(1)   The fireman, engineer, brakeman and conductor were fellow servants, and the conductor was not a vice-principal as to either the engineer or fireman.   McGowan v. Railroad, 61 Mo. 528; Marshall v. Sticker, 63 Mo. 308; Shaub v. Railroad, 106 Mo. 75; Rutledge v. Railroad, 123 Mo. 121; Ryan v. McCulley, 123 Mo. 636; Sherrin v. Railroad, 103 Mo. 378; Moran v. Brown, 27 Mo. App. 487; Corbett v. Railroad, 26 Mo. App. 621; Railroad v. Petty, 67 Miss. 255; Henry v. Railroad, 49 Mich. 495; Murray v. Railroad, 1 McMullen, 385; Bailey,PerInj.2363 ;Railroad v.Elliott,1 Cold. (Tenn.), 611; Railroad v. Blohn, 75 Tex. 637; 11 S. W. Rep. 869; Railroad v. Snyder, 117 Ill. 376; Railroad v. Dolan, 32 Mich. 510; Enright v. Railroad, 93 Mich. 409; Railroad v. Hughes, 29 Miss. 226; Heine v. Railroad, 54 Wis. 525; Wright v. Railroad, 80 Fed. Rep. 260; Jackson v. Railroad, 27 S. E. Rep. 278; Elliott on Railroad, secs. 1330, 1333.   (2)   The fact that the conductor performs one grade of service, the engineer another and the fireman another, or that the fireman is powerless to control the engineer or his movements of the engine, does not destroy the relation of fellow servants.   (3) The case of Railway v. Ross, 112 U. S. 377, upon which this case was submitted to the jury, and under which the court instructed the jury, is not applicable to the facts of this case, is not the law of this State and has been limited, criticised and overruled by the Supreme Court of the United States.   Railroad v. Baugh, 149 U. S. 368; Railroad v. Hambly, 154 U. S. 349; Railroad v. Keegan, 160 U. S. 259; Railroad v. Peterson, 162 U. S. 346; Bailey on Master and Servant, p. 239; Parker v. Railroad, 109 Mo. 392; Dixon v. Railroad, Ib. 413; Railroad v. Needham, 63 Fed. Rep. 107. (4) The acts of negligence averred in the petition were all eliminated except the stub-switch, the location of the target and the condition of the

engine, neither of which was the direct cause of the accident. The causes were the act of a miscreant in opening the switch, the negligence of the engineer and the violation of the rules. This, as shown by the proof and conceded and urged by the plaintiff, is a departure, is not the cause of action alleged in the petition and is a failure of proof as to any of the acts of negligence averred.   Brown v. Hershaw Land & Lumber Co., 65 Mo. App. 162; Hite v. Railroad, 130 Mo. 132; Gurley v. Railroad, 93 Mo. 445; Harris v. Railroad, 37 Mo. 308; Harty v. Railroad, 95 Mo. 368.   (5)   The only combining circumstance with the negligence of the engineer and the violation of the rules, was the act of a miscreant in opening the switch, for which the railroad company is not liable.   Curtis v. Railroad, 18 N. Y. 534; Keeley v. Railroad, 47 How. Pr. 256; Harris v. Railroad, 13 Fed. Rep. 591; Elliott on Railroads, sec. 1636.   (6)   If there were any risks incident to the use of the stub switch, the location of the switch stand or the condition of the engine, they were assumed by the plaintiff, who knew of them and still remained in the defendant's employ.   Lucey v. Hannibal Oil Co., 129 Mo. 32; Holloran v. Foundry Co., 133 Mo. 470; Wray v. Electric Light Co., 68 Mo. App. 330; Marshall v. Kansas City Hay Press Co., 69 Mo. App. 256; Krampe v. St. Louis Brewing Ass'n, 59 Mo. App. 277; Roddy v. Railroad, 104 Mo. 234; Price v. Railroad, 77 Mo. 508; Porter v. Railroad, 71 Mo. 76; Devitt v. Railroad, 50 Mo. 302; Thorpe v. Railroad, 89 Mo. 650; Berning v. Medart, 56 Mo. App. 443; Rutledge v. Railroad, 110 Mo. 312; Bohn v. Railroad, 106 Mo. 429.   (7)   The acts of the engineer, his refusal to heed the warning and notice of the fireman, the violation of the rules, the failure of the fireman to leave the engine when it almost stopped and the engineer refused to comply with the warning and the rules in respect to the danger pointed out, was contributory negligence, which will defeat any recovery in this action.   Shortel v. St. Joseph, 104 Mo. 114; Keegan v. Kavanaugh, 62 Mo. 230; Stephens

v. Railroad, 96 Mo. 209. (8) Upon the testimony of the plaintiff there can be no recovery.

*Cravens & Cravens* and *Edward H. Stiles* for respondent.

The uncontradicted testimony shows that the conductor had at the time the absolute control, management and direction of the train and of all persons engaged in running it. When he said go on, it was the duty of the engineer to move; when he said stop, the train must stop; and when the conductor signaled the engineer to proceed he felt bound to do so, notwithstanding the protest of plaintiff, and as plaintiff well expressed it he was "helpless." If the conductor had control of the train and of the engineer, fireman and brakeman, assisting in running it, then he was vice-principal and this has been so held in all the cases in this State. Brothers v. Cartter, 52 Mo. 372; Gormly v. Vulcan, 61 Mo. 492; Whalen v. Church, 62 Mo. 326; Cook v. Railroad, 63 Mo. 397; Moore v. Railroad, 85 Mo. 588; Stephens v. Railroad, 86 Mo. 221; Hoke v. Railroad, 88 Mo. 360; Tabler v. Railroad, 93 Mo. 79; Dayharsh v. Railroad, 103 Mo. 570; Smith v. Railroad, 92 Mo. 359; Sherrin v. Railroad, 103 Mo. 383; Dixon v. Railroad, 109 Mo. 421; Hutson v. Railroad, 50 Mo. App. 305; Miller v. Railroad, 109 Mo. 350; Foster v. Railroad, 115 Mo. 165; Berry v. Railroad, 124 Mo. 223; Covey v. Railroad, 27 Mo. App. 170; Cox v. Syenite Granite Co., 39 Mo. App. 242; Banks v. Railroad, 40 Mo. App. 458; Higgins v. Railroad, 43 Mo. App. 547; Hall v. St. Joseph Water Co., 48 Mo. App. 364; Mason v. Railroad, 11 N. C. 482. (a) The following cases are cited as holding that the conductor is not a fellow servant with the other employees operating a train: Patton v. Railroad, 96 N. C. 455; Railroad v. DeBray, 71 Ga. 406; Boarwright v. Railroad, 25 S. C. 128; Coleman v. Railroad, 25 S. C. 446; Railroad v. Banks, 83 Ky. 129. (b) The conductor is not a fellow-servant with a brakeman. Railroad v. Moore (Ky.), 24 Am. and Eng. R. R. Cases, 443; Railroad v. Robinson, 4

Bush (Ky.) 508; Railroad v. Cavens, 9 Bush (Ky.) 559; Railroad v. Ackerly, 8 S. W. Rep. 691; Railroad v. Collins, 87 Am. Dec. 486.  (c)  The general principle is thus stated: "Where the servant is, in the grade of his employment, superior to the injured servant, or where one servant is placed by the employer in a position of subordination, and subject to the orders and control of another, in such a way and to such an extent that the servant so placed in control may reasonably be regarded as representing the master, as his *alter ego* or vice-principal, when such inferior servant, without fault, and while in the discharge of his duty, is injured by the negligence of the superior servant, the master is liable in damages for the injury."  Beach, Contr. Neg., sec. 110; Railroad v. May, 108 Ill. 288; Lalor v. Railroad, 52 Ill. 401; Railroad v. Hawk, 121 Ill. 259; Railroad v. Collins, 2 Duv. (Ky.) 113; Railroad v. Collins, 85 Tenn. 227; Railroad v. Jones, 9 Heisk 27; Washburn v. Railroad, 3 Head (Tenn.) 638; Railroad v. Wheless, 10 Lea (Tenn.) 741; Railroad v. Bowles, 9 Heisk (Tenn.) 866; Cowles v. Railroad, 84 N. C. 309; Dobbin v. Railroad, 81 N. C. 446; Criswell v. Railroad, 30 W. Va. 798; Railroad v. LaValley, 36 Oh. St. 221; Company v. Kraft, 31 Oh. St. 287; Railroad v. Little, 19 Kan. 267; Railroad v. Lundstrom, 16 Neb. 254; Railroad v. Crockett, 19 Neb, 138; Smith v. Railroad, 15 Neb. 583; Moon v. Railroad, 78 Va. 745; Atlanta, etc. v. Speer, 69 Ga. 137; Baldwin v. Railroad, 63 Ia. 210; Railroad v. O'Brien, 21 Pac. Rep. 32; Shear. & Redf. on Neg., sec. 102; Wharton on Neg., sec. 229; Railroad v. Stevens, 20 Oh. 415; Madden v. Railroad, 28 W. Va. 610.

MARSHALL, J.—The following opinion of Division No. One is hereby adopted as the opinion of the Court in Banc.

*Gantt, C. J., Sherwood* and *Valliant, JJ.,* concur.  *Burgess* and *Robinson, JJ.,* concur in the judgment of reversal, on the ground that the negligence of the engineer was the cause of the injury and that the engineer and fireman were

fellow servants, but do not regard the "departmental doctrine" as involved in the case. *Brace, J.*, dissents.

It is therefore ordered that the judgment of the circuit court be reversed.

### IN DIVISION ONE.

MARSHALL, J.—This is an action for damages for personal injuries received by plaintiff at McElhaney switch, in Newton county, Missouri, between the hours of 1 and 2 o'clock p. m. on July 12th, 1894. The petition charges that it was a switch station where trains stop only when signaled; that there is a side track, on the east side of the main track, long enough to hold eleven standard freight stock cars; that at each end of the side track there was a switch post placed on the east side of the main track instead of the west side, each post being about six feet and four inches from the east rail of the main track and used to work the switch; that the switch posts have targets placed on their tops, one side being painted red and the other white, so that the color indicates whether the switch is thrown to connect with the switch or with the main track— the red signifying that the connection is with the switch and the white that it is with the main track, and that when the red appears it is dangerous for trains to attempt to pass over from the opposite direction; that on July 12th, 1894, the switch or side track was full of empty freight cars, there being eleven standard freight cars on it, which were put there by defendant on July 11th, 1894, "making it impossible to see the target on the switch post at the south end of the switch track by those seated in engine cabs of trains moving south along said place until within 60 or 80 feet of said switch post; that the ties supporting the main track at the south end of the side track were rotten and would not hold the spikes that were intended to hold the rails in place; that at the south end of the switch track" was what is known as "a 'stub rail' switch, an old and abandoned and extremely dangerous and hazardous

character of switch, long since discarded by all practical railroad men, and especially dangerous and unsafe, under the circumstances, with the switch post and target on the east side of the main track; that the lock maintained on said switch was weak and old and insufficient to hold the same;" that plaintiff was employed as fireman on a train that was going from Pittsburg, Kansas, to Siloam, Arkansas, and when the train approached McElhaney flag station, going south, it was traveling at the rate of about fifteen miles an hour, and when it neared the south end of the switch it was discovered that the switch was thrown for the side track, which left the end of the main track, at the switch, open to this train, going south; that this could not have been discovered sooner because the cars on the side track obstructed the view of the switch post and target from plaintiff and the engineer on the engine; that if the cars on the side track had not obstructed the view or if the target had been on the west side of the track it could have been seen for a quarter of a mile before reaching the end of the switch; that as soon as plaintiff discovered that the switch was open he notified the engineer, who tried to stop the engine but could not do so in time, and the engine was thrown from the track, the rotten ties gave way and the engine was thrown over on its side; that when plaintiff saw his imminent danger he jumped from the cab of the engine; that the engine was old, worn out and defective and unfit for use, and the "pops," attached to the engine on the top of the steam dome, being defective and out of repair, flew out and the steam escaped and scalded and burned plaintiff over his whole body.

Plaintiff then sets out the negligence of the defendant to be:

"In permitting the empty cars to be and remain on the side track or switch aforesaid, and thereby preventing plaintiff and said engineer (who was killed) from seeing the signal target of the switch, which would advise them of the danger on account of said switch or track being moved out of place:

"In having said switch rods and targets on the east side of said main track instead of on the west, where it ought to have been for the appliance to be reasonably safe, and where proper and ordinary railroading required them to be placed, and where a person in the exercise of ordinary care and foresight would in view of the great danger involved have placed them:

"In having at that place an unsuitable and unsafe 'stub-rail' switch instead of a 'split' or 'spring' switch, which latter are entirely free from the danger which produced this accident and which ordinary care and foresight on the part of the defendant would have caused it to provide:

"In permitting said engine to be out of repair, and said 'pops' to be and remain loose, out of repair, and unsafe and in a dangerous condition as above stated:

"In having on said switch post an unsuitable and unsafe lock."

The answer admitted defendants' incorporation and ownership of the road, and also the allegations as to the character, purpose and working of the switch, and denied the other allegations of the petition. It then pleaded contributory negligence of plaintiff and the engineer, and averred that it was the duty of the plaintiff and the engineer to see that the switch was correctly set and the track clear before attempting to pass over it, and that they failed to exercise ordinary care in not stopping the engine where the cars on the side track obstructed the view of the target until they could ascertain whether the track was safe to pass over; that plaintiff knew the character of the switch and the condition of the engine and that notwithstanding they ran the train over the switch at a high rate of speed and caused the accident; that plaintiff and the engineer were in possession of the rules of the company defining and prescribing their duties, one of which, No. 65, was, "A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal;" another, No. 78, was, "All signals must be used

strictly in accordance with the rules, and train-men and engineers must keep a constant lookout for signals;" another, No. 121, was, "In all cases of doubt or uncertainty, take the safe course and run no risks;" that plaintiff and the engineer violated said rules by not stopping the train when they could not see the signals.

The reply was a general denial, but during the trial it was amended so as to allege that when the train approached McElhaney station, it slowed up with the intention of stopping there and at a point a short distance north of the end of the switch, and had almost stopped, when the conductor ordered the engineer not to stop, but to go on, which was done against plaintiff's protest, and he was powerless to prevent it or otherwise protect himself.

The trial disclosed the facts to be that the plaintiff about June 1st, 1894, began to run as a fireman on the local freight train between Pittsburg, Kansas, and Siloam Springs, Arkansas, and with the exception of a few days made daily trips, and in doing so passed this switch every day. The train crew on the day of the accident were. Jay Traver, engineer, George Bartholic, conductor, J. A. Cellar, brakeman, and plaintiff, fireman. There were two local freight trains running daily, one each way, between Pittsburg and Siloam. They usually met at Donahue, a station four miles north of McElhaney switch. On this day the south bound train, on which plaintiff was fireman, was late, and hence the freight train met at Neosho, between 12 and 1 o'clock p. m., the accident occurred between 1 and 2 p. m., the running time between Neosho and McElhaney was fifteen or twenty minutes, so that the north bound freight passed safely over the switch in question about thirty to forty minutes before the accident. The defendant had only acquired the portion of the road between Joplin, Mo. and Sulphur Springs in May, 1894, and had therefore only been operating it from May to July 12th, when the accident occurred.

At McElhaney station there was a switch or side track, on the east side of the main track.    At each end of the switch or siding there were "clearance posts," that is, posts to designate the limits that trains might occupy on the switch and the distance they must be kept from the main track.    These clearance posts were 429 feet apart.    On the day of the accident the switch was full of freight cars.    At both ends of the side track there were switch stands, of the character known as "stub-switches," that is, with blunt ends of the rails coming together, so that when the switch was opened a train coming from the south would run on the side track, but a train coming from the north would be derailed.    One of the claims made by the plaintiff is that a stub-switch is dangerous, not to the train coming from the south, for as to it, the only result would be to throw the train from the main track onto the switch or side track, but to the train coming from the north, for as to it the result would certainly be to derail the train; hence plaintiff claims that a "split-switch" or a "split-spring switch" should have been used, by which is meant a rail beveled on one side and coming almost to a knife edge at the end, so that it rests against the rails of the main track and changes the points of the switch from the main to the side track, and does not destroy or break the continuity of the main track, and that if such a switch had been used a train coming from the north would not have been derailed, but the flanges of the wheels would simply have forced the switch back and let the train pass through the switch along the continuous rails of the main track, and if it was a split-spring switch, it would have sprung back into place after the train passed through it.

When the train approached McElhaney the engineer brought it almost to a stop, at a point eighty rods north of the north end of the switch.    At this point the plaintiff notified the engineer that the side track was full of cars and that he could not see the target of the switch at the south end of the side track.    The engineer said:    "I am going, I have a signal

from the conductor to go on." Again plaintiff told the en-
gineer he could not see the target, but the engineer replied;
"I have a signal from the conductor and things are apparently
all right, and I am going." The engineer proceeded, increas-
ing speed the while, and when the train neared the switch at
the south end of the side track, the plaintiff notified the
engineer that the switch was open, the engineer tried to stop
the train, but did not succeed, and it ran off the track, turned
over, the "pops" were broken, the steam escaped and scalded
and burned plaintiff most seriously. The court gave the jury
twelve instructions at the request of the plaintiff, fifteen of
the court's own motion, and four asked by defendant. There
was a verdict for the plaintiff for six thousand dollars, and
defendant appealed.

## I.

The case was tried below on the theory that the conductor
was a vice-principal and that his orders to the engineer to go
ahead overcame the rules as to signals, unless the danger was so
apparent and imminent as to deter a person of ordinary pru-
dence from proceeding, and if the plaintiff, as fireman, was
under the control and subject to the orders of the engineer,
and had no control over the engine, and if plaintiff notified
the engineer that the switch target was obscured by the cars
standing on the side track and notwithstanding the engineer
went ahead, "then the acts of the said engineer in so doing
should not be regarded as the personal acts of plaintiff unless
he concurred therein."

The controlling legal questions in the case therefore are:
*First.* Are the conductor, engineer and fireman of a train
fellow servants, or is the conductor a vice-principal, and the
engineer and fireman fellow servants, or is the conductor a vice-
principal, the engineer a lesser vice-principal and the fireman
the servant; and, *second,* was the defendant negligent in not
furnishing safe appliances and machinery, that is, in maintain-

ing a stub-switch instead of putting in a split-switch or a split-spring switch. The leaky pops may be disregarded as they were not the proximate cause of the injury. Likewise the allegations as to the broken lock on the switch and the character of the ties may be eliminated as they had nothing to do with the injury.

There is no branch of the law that has received more attention than that relating to master and servant, and there is none as to which a greater diversity of opinion has been expressed, and certainly none that is to-day more uncertain.

The old doctrine that all persons under the control and in the pay of a common master are fellow servants, and that the master is not liable to any one for injuries received through the negligence of any of the others, has been relaxed, modified, distinguished and pared down, and with the characteristic ingenuity and inventiveness of the age, distinctions have been drawn, the first relation has been extended many degrees and the original classification has been many times subdivided, with the result that much contrariety of opinion exists, and the whole matter is unsettled and left in an unsatisfactory state. By some this has been called the evolution of the law from its original harshness to a more humane condition. By others it is placed upon the ground of necessity, that is, that where the master has a small business and only a few servants under his own eye and personal supervision, and where all of the servants are "Jacks of all Trades" in respect to the master's business, each doing any part of the whole, as he may be directed, they are fellow servants and have no recourse against the master for injuries received through the negligence of the others, but where the master's business increases, and becomes more extended, and spreads out into many places, and, perhaps, over many states, so that the master can not be always present in person to direct or to hear reports from his servants, it is, of course, necessary for him to have some one on the spot to represent him, an *alter ego*

or vice- principal it is called, who shall have the right to speak for the master, and in such cases such person's acts are the acts of the master, and he is liable to the servant for injuries received through his negligence, the same as if the master had been present, acting himself.

No serious objection can be raised to this rule in the abstract, for a master choosing to have a scattered or diversified business which he can not personally look after, must needs have a representative on the ground, and hence taking the benefits of such an extended business, he must bear the burdens necessarily incident to its transaction. At first a vice-principal was limited to be a person who had the right to employ and discharge the servants, but this has since been relaxed; and the rule now is that it is a question of authority to represent the master which determines the question of whether a person is a vice-principal. The courts have often been asked to lay down a definite principle or rule for the determination of the question, but as was well said by GANTT, J., in Parker v. Railroad, 109 Mo. l. c. 378: "After a careful examination of this subject, in its varied aspects, we think the attempt would be futile and unsatisfactory. The judge or court who would deal in general observations outside of the record under consideration would be treading on dangerous ground, and in a very short time would probably find 'himself hoisted by his own petard'......

"And after due consideration we are of the opinion that, unsatisfactory as it may seem, the *rule* itself must remain *general*, its *application specific*, as the cases arise. This rule, to exempt the master, requires the servants shall be employed by a common master, and the servants must be employed in the same common employment." Accordingly in that case it was held that a section hand engaged in repairing the track was a fellow servant with the engineer and crew running a construction train that was hauling rock to be used in ballasting the track.

Some courts have undertaken to lay down a rule broad and just and elastic enough to cover all cases, unmindful, it seems to me, of the fact that in so doing they are wiping out the old rule as it was at common law, and substituting a new rule of their own creation, which the changing conditions of life may shortly prove as unacceptable to their successors as the rules of the common law are to them. In the attempt, however, they have classified the service of the master, divided it into departments of service, and say that a servant shall be barred of recovery only where the injury was received through the negligence of a fellow servant in the same department of service, and shall not be cut off where it came about through the negligence of a servant in another department. The reason given for this is that: "Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends, to a great extent on the care and skill with which each shall perform his appropriate duty, each is an observer of the conduct of the other, can give notice of any misconduct, incapacity or neglect of duty, and leave the service if the common employer will not take such precautions and employ such agents as the safety of the whole party may require." Yet in the practical application of the departmental doctrine to the specific cases that have arisen, as much difficulty has been encountered as was found before, and different courts have disagreed as widely on the same state of facts as was the case before the introduction into the law of the new rule. In fact, the reported cases show that the decision of the same court can not be made to harmonize under the principles announced in the new rule. This is partly explainable from the fact that the same person in the same department may occupy the relation of vice-principal and fellow servant at the same time or may be the one to-day and the other to-morrow. Even in the same department there may be several distinct gangs of servants, each having its own foreman, or vice-principal, and neither in a position to observe the conduct and give the notice of mis-

conduct, incapacity or neglect of duty in the other, yet under the departmental doctrine the servants in each are the fellow servants of those in the other gang.

*The practical difficulty in trying to enforce the departmental doctrine is that it is nowhere stated of what the departments shall be composed.* The term or name is employed as expressive of a class, but there has been no attempt to classify. The result is contrary judgments upon the same facts, an irreconcilable contrariety of opinion, with a natural and to-be-expected confusion in the law, with no better or more satisfactory results to either the master or servant than were attained before the doctrine was announced. A brief review of the decisions in our State will suffice to illustrate.

McDermott v. Railroad, 30 Mo. 115, was the first case in which the doctrine of fellow servant was discussed. It was a suit by a brakeman who was injured by the Gasconade bridge disaster in 1860. NAPTON, J., held there could be no recovery as the brakeman and bridge builders were fellow-servants, and that the rule "applied in all cases alike, without regard to the degrees of subordination in which the different servants or agents may be placed with reference to each other," citing with approval Farwell v. Railroad, 4 Metc. 49. WAGNER, J., in Rohback v. Railroad, 43 Mo. 187, held a track repairer and a trainman were fellow servants. In Moore v. Railroad, 85 Mo. 588; HENRY, J., held that a car repairer and the crew of the engine that ran into the car the repairer was working on, were not fellow servants, and allowed a recovery to stand on the ground that the company was obliged to provide for the safety of the servant, and the foreman of the repair shop had promised the repairer to see to it that no engine should run into the car which was standing on the side track and which he was repairing. In McGowan v. Railroad, 61 Mo. 528, HOUGH, J., held that a conductor and a laborer engaged in loading bridge timbers on the train were fellow servants. In Smith v. Railroad, 92 Mo. 359, NORTON, J., held that a train-

dispatcher and the conductor, engineer and fireman of a train are not fellow servants. In Sherrin v. Railroad, 103 Mo. 378, GANTT, P. J., held that the two foremen of two different gangs of section men, working independently of each other but under the same roadmaster, are fellow servants. In Sullivan v. Railroad, 97 Mo. 113, BLACK, J., held that a track-walker is not a fellow servant with an engineer or fireman of a passenger train. In Murray v. Cable Railway Co., 98 Mo. 573, BLACK, J., held that the gripman and a watchman at a street crossing, whose duty it was to signal the cars to stop or go ahead, were fellow servants, because engaged in the same common employment of running the cars. In Higgins v. Railroad, 104 Mo. 413, GANTT, P. J., held that an engineer and laborer on a construction train were fellow servants. In Parker v. Railroad, 109 Mo. 362, GANTT, P. J., held that a track repairer and the engineer of a construction train were fellow-servants. In Dixon v. Railroad, 109 Mo. 413, BARCLAY, J., held that a laborer, whose duty was to couple small cars used to haul rock up an incline across the track, the rock to be crushed and used as ballast for the road, was not a fellow servant with the engineer of a passenger train. In Tabler v. Railroad, 93 Mo. 79, BLACK, J., held that a master mechanic and wreck-master was not a fellow servant of a bridge carpenter. In Miller v. Railroad, 109 Mo. 350. BLACK, J., held that a con-ductor of a material train, having control of it and its move-ments, and the foreman over a crew engaged in repairing a railroad track, having power to direct them, are vice-principals, and the defendant is liable for the death of a member of the crew occasioned by their negligence. In Relyea v. Railroad, 112 Mo. 86, BLACK, J., held that a brakeman on one freight train and a fireman on another, where they are engaged in the same department of service and are operating trains over the same section of the road, are fellow servants. The learned judge further laid down the departmental doctrine as follows: "They are co-servants who are so related and associated in their

Grattis v. K. C., P. & G. R'y Co.

work that they can observe and have an influence over each other's conduct and report delinquencies to a common correcting power; and they are not co-servants who are engaged in different and distinct departments of work;" and further said: "Now in this case each servant was under the immediate command of his own conductor, it is true; but that fact does not constitute a decisive or controlling circumstance. Many cases may be instanced where different gangs of men, each gang under the orders of its own foreman, are clearly co-servants within the rule of exemption."

In Schlereth v. Railroad, 115 Mo. 87, BURGESS, J., held that a locomotive engineer and track repairer are not fellow servants. In this case MACFARLANE, J., wrote the opinion of the court in Division No. 2, and said: "It is insisted in the first place that the demurrer to the evidence should have been sustained for the reason, as is claimed, that deceased and the negligent engineer were fellow servants within the rule which exempts the master from liability for damages to one servant resulting from the negligence of the other. There is no doubt that the weight of judicial authority sustains the position for which defendant contents. [Murray v. Railroad, 98 Mo. 573.] The majority of the members of this court are of the opinion however that the reasons and policy upon which the rule of exemption has been placed do not extend to those common employees of a railroad corporation occupying the relation to each other sustained by deceased and the engineer. The writer has been of the opinion that the general rule exempting the common master in all cases where the servants are engaged in a common service, has been recognized and approved by the courts of this State for so long a period of time, without change or serious question, that while the principle has been questioned it has become the settled policy of the State and should only have been changed by legislative action. [Rohback v. Railroad, 43 Mo. 192, and cases cited in dissenting opinion of GANTT, J., in Parker v. Railroad,

109 Mo. 362.]    The importance of having the rules of law
firmly established, especially those under which property rights
are held, or the business and wages of large classes of citizens
are made to depend is fully recognized, and we therefore hold
in accordance with the late rulings of the court that the hus-
band of plaintiff was not a fellow servant of the negligent
engineer. [Sullivan v. Railroad, 97 Mo. 113; Parker v. Rail-
road, *supra*]." A motion for rehearing was filed and by
reason of a division of the court the case was sent to the Court
in Banc for review. BURGESS, J., wrote the opinion inBanc,
and held that on the faith of Sullivan v. Railroad, 97 Mo. 113,
Parker v. Railroad, 109 Mo. 362, and Dixon v. Railroad, 109
Mo. 413, the deceased and the engineer were not fellow
servants, because they were not in the same departments of
service.

In this connection it is well to note that in the Parker
case GANTT, SHERWOOD and MACFARLANE, JJ., held that the sec-
tion hand and the engineer of the construction train were fel-
low servants, and hence they voted to reverse the judgment in
plaintiff's favor, while BLACK, J., held they were *prima facie*
fellow servants but that it might be rebutted by plaintiff, and
so voted to reverse and remand, and THOMAS, BRACE, and
BARCLAY, JJ., were of opinion that they were not fellow ser-
vants, while in the Dixon case BLACK, BRACE, BARCLAY and
THOMAS, JJ., held that the laborer and the engineer were not
fellow servants, and SHERWOOD and GANTT, JJ., held they were
and MACFARLANE, J., having been of counsel, did not sit.

In Swadley v. Railroad, 118 Mo. 268, BLACK, P. J., held
that a track repairer was not a fellow servant with the train
crew of a regular freight or passenger train, and distinguished
the case from the Parker case, where it was a crew on a con-
struction train and a track repairer. In Rutledge v. Railroad,
123 Mo. 121, BARCLAY, BLACK and BRACE, JJ., held a switch-
man and the engineer were fellow servants. In Jones v.
Railroad, 125 Mo. 666, MACFARLANE, J., held that a porter in

a Pullman car is not a fellow servant with the engineer and conductor. In Keown v. Railroad, 141 Mo. 86, BARCLAY, P. J., held that the foreman of a street car line and a gripman on one of the cars were not fellow servants. In McCarty v. Rood Hotel Co., 144 Mo. 397, SHERWOOD, J., held the electrician and engineer in a hotel a fellow servant with the elevator boy.

This is the state of the adjudications in our State, and similar conditions exist in other States where the departmental doctrine has been introduced into the decisions. Can any man, however learned in the law, however abstruse his analytical faculties, or however discriminating his logical powers, deduce any rule from these adjudications, or define the departments or classify or arrange the classes? Is the servant better protected or more humanely treated by this doctrine than he was before its adoption? Is the master's duty made plain, or the labors of the bar and the courts made lighter? In practical operation is it not true that these cases are, at last, decided according to their individual merits as they appeared from the facts proved, and as the justice of each seemed to the judge deciding them to require when gauged by the old, tried and accepted standards of the common law? Is it not a fact that the departmental doctrine exists only in theory and not in practice?

The only definite definition of a department that is attempted by any of them is by BLACK, J., in Parker v. Railroad, *supra*, when he puts clerks in the office in one department, and servants operating a train in another. Yet in that same case it was held that a track repairer and the train crew of a construction train were fellow servants because in the same department, while in the Dixon case, which immediately follows the Parker case in the same volume of the reports, it was held that a laborer who attached the rope to a small car used to haul rock to a rock crusher and intended for ballasting the road, was not a fellow servant with the engineer of a

passenger train; and on the same line, in the Sullivan case (97 Mo. 113), it was held that a track walker and an engineer were not fellow servants, yet in Relyea v. Railroad (112 Mo. 86), it was held that the brakeman on one freight train and a fireman on another were fellow servants, and in the Schlereth case (115 Mo. 87), it was held that an engineer on a passenger train and a track repairer were not fellow servants, and in the Swadley case (118 Mo. 268), it was held that a track repairer and the train crew on either a freight or passenger train were not fellow servants, while in the Rutledge case (123 Mo. 121), a switchman and an engineer were held fellow servants.

If it be said that these cases show the evolution of the law, how can the Relyea case (112 Mo. 86), be reconciled with the departmental idea? The brakeman on the one train and the fireman on the other can not observe the conduct of each other and give notice of "misconduct, incapacity or neglect of duty." In short, it may be pertinently asked what is the classification into departments of service which these cases create or authorize or recognize? Is it that clerks in the office constitute one department, train dispatchers another, the crew of a passenger train another, the crews of two freight trains another, the crew of a construction train and the track repairers another, the track walkers a department unto themselves, the mechanics in the shops another, etc., etc.? If so, are these all the departments, or if not, what others are there? Measured by experience and tested scientifically, if there is to be a division into departments, it should be, 1st the mechanical, 2d the operative, 3rd the clerical, 4th the managerial, and 5th the executive. This would come nearer the natural and business division of work. The road could not be run without the engine and cars, the mechanical appliances; nor would the machines move without they were operated by human beings, nor could they move without tracks and there could be no tracks without human beings to build them and keep them in repair; nor could the machines be built and the tracks

laid and the cars be run, without clerks to keep track of the business and attend to collecting the freight and passenger charges; nor could any of them be made to work harmoniously or successfully without managers; nor could the road be built or run or managed without the executive head that provided the finances in the first place, and provided for the regularly recurring operating expenses. Yet no court has divided the business into such departments or made any other division or classification. The adjudicated cases in our State when brought into contraposition or conjunction do not in the aggregate define the division into departments, but when any attempt is made to deduce a rule or create a class out of the several cases, discrepancies and inconsistencies are at once apparent. Still this court and the supreme courts of other States speak of departments of service, and yet in practice allow or deny recoveries which can not be harmonized on the theory of departments of service. Practically, therefore, there is no difference between the old and the new rule. It leaves it where the old masters of the law put it, a mixed question of fact and law in every case. And so it should be.

The lower court in this case treated the conductor as a vice-principal, whose order to the engineer, to go ahead, amounted to a suspension of the rule which required the engineer to look out for the signals or targets, and also treated the engineer as a vice-principal whose disregard of the warning of the plaintiff that he could not see the signal or target was the same as the negligence of the master, and because of his relation to the fireman, held that they were not fellow servants.

It is not denied that in so treating the conductor in his relations to the engineer and fireman, the lower court followed the case of C., M. & St. P. Ry. Co. v. Ross, 112 U. S. 377, which so holds, but in the light of subsequent decisions of that distinguished tribunal, the Ross case can not now be considered the law in that court. [Railroad v. Baugh, 149 U. S.

368; Railroad v. Hambly, 154 U. S. 349; Railroad v. Keegan, 160 U. S. 259; Railroad v. Peterson, 162 U. S. 346, and Oakes v. Mase, 165 U. S. 363.] In the last case cited that court held the engineer of one train to be a fellow servant with the conductor of another. In our State beginning with McDermott v. Railroad (30 Mo. 115), and running through Rohback v. Railroad (43 Mo. 192), and McGowan v. Railroad (61 Mo. 528), the conductor, engineer, fireman and brakeman have been held to be fellow servants. If the departmental doctrine and the reasons given for it, to wit, opportunity to observe each other, notice and report incapacity or neglect, be followed, the result is the same and they must be held to be fellow servants. Plaintiff, however, cites many cases in other jurisdictions, which it is claimed hold that a conductor is a vice-principal and not a fellow servant with the engineer, fireman and brakeman, but an examination of them shows the point here involved was present only in the case of Moon v. Railroad, 78 Va. 745 (and that case showed that the conductor had the power of placing and assigning to duty of the train men and the deceased was assigned to duty as a brakeman), and the case of Cowles v. Railroad, 84 N. C. 309 (where it was held that one who is the engineer and conductor of a train is not a fellow servant with the brakeman), and the case of Railroad v. Collins, 85 Tenn. 227 (where the engineer was held not to be a fellow servant with a brakeman). Without further reference to other cases then, it may be said, that *prima facie*, at least, the conductor, engineer and fireman on the same train are fellow servants. The engineer and fireman were held to be fellow servants in Railroad v. Baugh, 149 U. S. 368; and the engineer of one train and the conductor of another were held to be fellow servants in Oakes v. Mase, 165 U. S. 363.

In this case the order to go ahead was given by the conductor, who was in the caboose, at the rear of the train, eating his dinner, to the brakeman, who in turn signaled it to the engineer. Neither could see then or under usual circum-

stances whether the track was clear or not.    It was the especial
duty of the engineer and fireman to watch the track and see
that no obstructions were in the way and to keep a sharp look-
out for open switches.    [Smith v. Railroad, 113 Mo. l. c. 80.]
The conductor's signal or order to go ahead can not have the
effect of waiving or suspending the rule of the company, which
the engineer and plaintiff well knew, to observe the targets and
danger signals and in case of doubt to stop.    Nor could it
overcome the express notice of danger given by plaintiff him-
self to the engineer that the side track was filled with cars
which obstructed the view so he could not see the target.    It
was plainly the duty of the engineer under the circumstances to
stop. His failure to do so was the direct cause of the accident.
The fact that plaintiff was helpless to stop the engine does not
alter the case.    The plaintiff assumed that risk when he
entered the employment.    [Gibson v. Railroad, 46 Mo. 169.]
He knew he could never stop the engine.    But the engineer
is not shown to have been incompetent or an unfit person in
any way.    So there was no negligence on the part of the de-
fendant in employing him.

It follows that the circuit court erred in holding that the
conductor was a vice-principal and also in holding that the
engineer and the fireman were not fellow servants.

## II.

It is insisted, however, that the master was bound to
furnish his servants with safe and suitable appliances for the
work, and that it failed in this regard by furnishing a stub-
switch instead of a split-switch or split-spring switch, and that
if either of the latter had been furnished, the accident in this
case would not have occurred.

It is settled law that it is the duty of the master to furnish
safe and suitable appliances for his servants to use.    He owes
this duty to his servant, but his liability in this regard must
not be confounded with any question of fellow servant.

[Parker v. Railroad, 109 Mo. l. c. 407; Williams v. Railroad, 119 Mo. 316; Bender v. Railroad, 137 Mo. 240.] The evidence shows that with a split-switch or a split-spring-switch an engine can safely run through a switch from the reverse side of it without being derailed but that with a stub-switch the continuity of the main track is broken, and if an engine is run through it from the opposite side, it will be derailed. Both the engineer and the fireman knew this fact. They knew this was a stub-switch. They had passed over it every day for over a month. They also knew the dangers of trying to run through a stub-switch. There is no doubt that a split-switch or a split-spring switch is safer when passing over it in the wrong direction, than a stub switch. In fact, the two former are comparatively and reasonably safe, while the latter is positively dangerous. But there is absolutely no evidence in this case that a stub switch is not safe and suitable when it is used in the natural and usual manner of using a switch. On the contrary, it was the only kind of a switch that was used for many years. It never was intended to be run through from the wrong direction, nor in fact is there any evidence that the split or split-spring-switches are intended to be used in this way. The master can not be adjudged guilty of a failure of duty where he furnishes a servant machinery and appliances which are reasonably safe when used in the manner they are intended to be used, but which may become dangerous if their use is perverted by the servant. The master is not bound to furnish the safest and best appliances that could be used. He is acquit of fault if what he furnishes is reasonably safe and suitable. A stub-switch is not the safest or best, but it is reasonably safe and suitable. The master can not be adjudged negligent in this regard. [Tabler v. Railroad, 93 Mo. 79.]

The placing of the target on the same side of the main track with the side track is claimed to be negligence. If it had been placed on the other side of the main track, it could

have been more easily seen by the engineer when going south and would not have been hidden from view by the cars on the side track.    But coming north the engineer could not have seen it as well as he could if it was on the east side of the track.    Aside from this, the evidence discloses that there is no uniform rule as to which side of the track it shall be placed on.  The character and topography of the surroundings usually determine the position.    It matters not which side it is placed on, the rules of the company require the engineer and fireman to watch for it, and if it indicates danger or if they can not see it they must take the safe course and stop.   If the cars on the side track prevented the engineer or fireman from seeing the target, it was their duty to stop.    The conductor's signal to go ahead, can not be construed into meaning anything more than that so far as his end of the train was concerned there need be no stop.   It could not reasonably be construed into an order to the engineer to shut his eyes  or disregard the rules and run ahead through an open switch.   The conductor was not in a position to know whether the track was clear or the signals and targets obscured from sight or the switch open or not.   This was essentially the duty of the engineer and fireman.   In no proper sense can the order of the conductor—or rather the brakeman, for the engineer got it from the brakeman, and could not have known that the conductor had instructed the brakeman to give it—be said to be a waiver of the rules.   This, too, whether the conductor be a vice-principal or a fellow servant of the engineer.

### III.

But Missouri is not alone in respect to the uncertain state of the law relating to this subject.  Speaking on this matter, Corliss, C. J., in Ell v. Railroad, 48 N. W. Rep. 222, aptly says:  "This issue of law we are to determine, and our investigation must run along the line of general principles for the adjudications upon this subject—so multitudinious as

almost to warrant the simile, 'thick as autumnal leaves that strew the brooks in .Vallambrosa'—these adjudications are so discordant, enumerating so many rules, stating so many limitations, applying the law to facts so diverse, that one is reminded of Gibbon's remark upon the infinite variety of laws and opinions when Justinian entered upon the reform of codification, that they were beyond the power of any capacity to digest."

The learned judge, speaking of the test sometimes applied of power to observe and right to report the conduct of each other, as decisive of the relation of master and servant, or cf whether the injured and the negligent servant belong to the same "department of service," says: "Many of the cases holding the master exempt from liability under the fellow servant rule, were as we have said, cases in which the injured servant could not possibly have exerted influence over the negligent servant. Their separate departments of service, or their usual stations of employment, kept them, as a rule, entirely aloof from each other. In the following cases the relation of fellow servant was held to exist between persons who could exert little, if any, influence over each other: Steamship Co. v. Merchant, 133 U. S. 375—the carpenter, the porter and stewardess of a steamship; Railway Co. v. Welch, 72 Tex. 298—foreman of a bridge gang, and servants operating train; Elliott v. Railroad, 5 Dak. 523—a section foreman and a conductor; Fagundes v. Railroad, 79 Cal. 97—a laborer employed to remove snow from track and a conductor; Baughman v. Superior Court, 72 Cal. 573—a conductor and a brakeman; Randall v. Railroad, 109 U. S. 478—a brakeman and a conductor of different trains; Van Wickle v. Railway Co., 32 Fed. Rep. 278—a track repairer and an engineer; McMasters v. Railroad (Miss.), 4 South. Rep. 59—brakeman of one train and an employee on another; Naylor v. Railroad Co., 33 Fed. Rep. 801—engineer and switchman; Van Avery v. Railroad Co., 35 Fed. Rep. 40—engineers of different trains; Connelly v. Railroad Co. (Minn.), 35 N. W. Rep. 582—a

section man and an engineer or brakeman; Howard v. Railroad Co., 26 Fed. Rep. 837—an engineer and fireman of different trains; Railroad Co. v. Rider, 62 Tex. 267; Gormley v. Railroad Co., 72 Ind. 31; Collins v. Railroad Co., 30 Minn. 31; Keyes v. Railroad Co. (Pa.), 3 Atl. Rep. 15; Whaalan v. Railroad Co., 8 Ohio St. 249—in each case an engineer and a section man."

In the same case attention is called to the reasoning of Judge COOLEY in his work on Torts (543), in which he combats the idea that the question can be solved by reference to the grades of the injured and negligent servants respectively, and denies that reason or logic or public policy gives sanction to such a doctrine.

Reference is also made to the article of Judge DILLON in 24 American Law Rev., 175, which is so appropriate to this case as to justify its verbatim reproduction here, as follows: "The master owes certain defined, personal, inalienable, non-assignable duties towards servants.    These personal duties may be devolved on others by the master, but not without recourse on him......In the general American Law as I understand it, the doctrine of vice-principal exists to this extent and no further, viz.: That it is precisely commensurate with the master's personal duties towards his servants; as to these the servant who represents the master is what we may call for convenience a vice-principal for whose acts and neglects the master is liable.    Beyond this the employer is liable only for his own personal negligence.    This is a plain, sound, safe, and practicable line of distinction.    We know where to find it and how to define it.    It begins and ends with the personal duties of the master.    Any attempt to refine based upon the notion of 'grades' in the service or, what is much the same thing, distinct 'departments' in the service (which departments frequently exist only in the imagination of the judges and not in fact), will only breed the confusion of the Ohio and Kentucky experiments, whose courts have constructed a labyrinth in which the

judges that made it seem to be able to 'find no end in wandering mazes lost' . . . . . . . The real inquiry is : Was the injury caused by another servant, one of the ordinary risks of the particular employment? If so, the grade, whether higher, lower, co-ordinate, or the department of the faulty servant is of no consequence. It is a condition of the contract of service that the servant takes upon himself the risk of accidents in the common course of the business, all open and palpable risks, including the negligence of all fellow servants of whatever grade in the same employment."

In view of the dubious state of the law on this subject in our own and sister States, brought about by the introduction of new, but not useful, rules and theories, is it not time to set the target signal of danger, and to return to the beaten track, lit up by the "gladsome light of jurisprudence," which the experience of ages, and the wisdom of the brightest legal minds of the world has laid out for us, and to cease, like moths, to burn our wings in the candles of "grades" and "departments?"

The judgment of the circuit court is reversed. *Robinson* and *Williams, JJ.,* concur in the judgment of reversal herein, on the ground that the negligence shown was that of the engineer, who under the decisions in this State, was a fellow servant with the plaintiff, but do not regard the "departmental doctrine" as involved in this case. *Brace, J.,* dissents.