FRANK O. BEEBE, Administrator of Estate of DAVID W. SILLS, Deceased, v. ST. LOUIS TRANSIT COMPANY, Appellant.

**Division Two, July 13, 1907.**

1. **NEGLIGENCE:** **Master and Servant: Appliances.** The master must use ordinary and reasonable care to provide and maintain safe machinery, tools and appliances with which to do the master's work. But he is not required to furnish absolutely safe appliances. Nor is he an insurer of the absolute safety of either the servant or the appliances.

2. ————: ————: ————: **No Substantial Evidence.** Where there is no substantial evidence that the defendant railway company had failed to use reasonable care in procuring and using a reasonably safe controller, which exploded and injured the plaintiff, a motorman, or that it had failed to exercise ordinary care to inspect the controller, and none to show that by the exercise of reasonable care in making inspections defendant might have discovered its dangerous condition, plaintiff cannot recover.

3. ————: ————: ————: **Inferred from Accident: Numerous Causes.** Plaintiff was a motorman on an electric car, and while operating it the controller exploded, and badly injured him. The controller was inclosed in a box, and was used to apply and regulate and cut off the electrical force which constituted the motive power of the car, and the motorman was ignorant of its construction and interior arrangement, and it was not his duty to keep it in a safe condition. Those controllers used at the time were the best on the market. There was evidence tending to show that any foreign substance in a controller, such as dirt, water or grease, might cause a slight flash or explosion, which might be prevented by inspection, but there was no evidence that defendant failed to inspect the controllers as often as seemed necessary, and the evidence further shows that any one

of numerous causes might have brought about the explosion, among which was the accumulation of dirt in the controller, and that dirt might have gotten into the controller at any time while the car was in charge of plaintiff while at work on the track, without any fault or negligence on the part of defendant, and the evidence does not show what particular thing caused the explosion. *Held*, that defendant's negligence cannot be inferred from the mere fact that an explosion occurred, and no negligence on defendant's part being established plaintiff cannot recover.

4. ———: **Conjecture.** Where the cause of the explosion which produced plaintiff's injuries is purely conjectural, he cannot recover.

Appeal from Boone Circuit Court.—*Hon. Alex. H. Waller*, Judge.

REVERSED.

*Boyle & Priest, Edward T. Miller* and *J. W. Jamison* for appellant.

(1) A master is not required to furnish his servant absolutely safe appliances. He is not an insurer of the sufficiency, nor of the absolute safety of the appliances furnished by him. Chrismer v. Bell Tel. Co., 194 Mo. 189; Bowen v. Railroad, 95 Mo. 268; Gutridge v. Railroad, 105 Mo. 520; Blanton v. Dold, 109 Mo. 64; Brown v. Herschy L. & L. Co., 65 Mo. App. 162; Marshal v. K. C. Hay Press Co., 69 Mo. App. 256; Glascock v. Swofford Bros. D. G. Co., 74 S. W. 1040; Zellers v. Mo. Water & Light Co., 92 Mo. App. 107; Glover v. Kansas City Bolt & Nut Co., 153 Mo. 327. An employer cannot be adjudged guilty of a failure of duty where he furnished machinery and appliances which are reasonably safe when used in the manner intended to be used, but which may become dangerous if their use is perverted by the employee. Grattis v. Railroad, 153 Mo. 380. A master may use any reasonably safe machine he chooses. Chrismer v. Bell Tel. Co., 194 Mo. 189; Muirhead v. Railroad, 19 Mo. App. 634; Bowen

v. Railroad, 106 Mo. 429; Huhn v. Railroad, 92 Mo. 440; Friel v. Railroad, 115 Mo. 503; Blanton v. Dold, 109 Mo. 520; Berning v. Medart, 56 Mo. App. 443; Higgins v. Railroad, 43 Mo. App. 547; Harrington v. Railroad, 78 S. W. 663; Curtis v. McNair, 173 S. W. 170. Whatever is according to the general, usual and ordinary course adopted by those in the same business is reasonably safe within the meaning of the law. The test is general use. Mason v. Fourteen Mining Co., 82 Mo. App. 367; Kane v. Falk Co., 93 Mo. App. 207; Minnier v. Sedalia, etc., 167 Mo. 99. No inference of negligence can arise where the evidence shows that an implement used by a servant in the performance of his work is such as is ordinarily used for like purposes by persons engaged in the same kind of business. Bohn v. Railroad, 106 Mo. 429; Holt v. Railroad, 84 Mo. App. 443. Negligence of the master is not presumed, but must be shown. It must be shown that there was a defect, and that it was, or ought to have been, known to defendant. Brooks v. Railroad, 71 S. W. 507. (2) As under the law defendant was not required to exercise the highest degree of care for the safety of plaintiff, the doctrine of *res ipsa loquitur* does not apply. Glascock v. D. G. Co., 106 Mo. App. 664; Wojtylak v. Coal Co., 188 Mo. 260; Fuch v. St. Louis, 167 Mo. 620; Hough v. Austin, 46 Ohio St. 386; Cosulich v. Standard Oil Co., 122 N. Y. 123; Walker v. Railroad, 71 Iowa 658; Losee v. Buchanan, 51 N. Y. 476; Oglesby v. Railroad, 177 Mo. 272; Hope Salt Co. v. Vieth, 57 L. R. A. 410; Girard v. Griswold, 8 Am. Neg. Rep. 643; Cothron. v. Packing Co., 98 Mo. App. 343; Goranson v. Mfg. Co., 186 Mo. 300; McGrath v. Railroad, 197 Mo. 104; Trotter v. Railroad, 99 S. W. 508. (3) The duty of the master to inspect the appliances in order to maintain them in a reasonably safe condition is continuous. This does not mean that a continuous inspection must be exercised from moment to moment, but

only that it must be such as is reasonable under all the circumstances. Krampe v. Brewing Assn., 59 Mo. App. 277; Shea v. Railroad, 76 Mo. App. 29; Huth v. Dhole, 76 Mo. App. 671. There must be substantial evidence that the defendant failed to exercise ordinary care in keeping the appliances in repair. O'Donnell v. Baum, 38 Mo. App. 245; Krampe v. Brewing Assn., 59 Mo. App. 277; Breen v. Cooperage Co., 50 Mo. App. 202; Bohn v. Railroad, 106 Mo. 429. (4) There is no evidence to support the verdict, and the verdict is against both the evidence and the weight of the evidence and the law as declared by the court, and there was no evidence to support plaintiff's instructions. Chrismer v. Bell Tel. Co., 194 Mo. 189; Danker v. Goodwin Mfg. Co., 102 Mo. App. 723; State v. Northway, 164 Mo. 513.

*Richard F. Ralph* and *Barclay & Fauntleroy* for respondent.

(1) The occurrence out of which this action grows demonstrates, by its own circumstances, that defendant was negligent (in the particulars charged against defendant in the petition) requiring some explanation by defendant. If ever facts speak for themselves, they do in this case, in favor of this motorman, against whom not even an allegation of any sort of negligence on his part is made. Jones v. Railroad, 178 Mo. 544; Gannon v. Gas Co., 145 Mo. 502; Rose v. Railroad, 11 Fed. 438; Tateman v. Railroad, 96 Mo. App. 448; Judson v. Powder Co., 107 Cal. 549; Kearney v. Railroad, L. R. 5 Q. B. 411; McCoy v. Gas Co., 212 Pa. St. 255; Houston v. Brush, 66 Vt. 346. The precept that the "thing itself speaks" (as applying to evidence of negligence) is held to govern cases of master and servant as well as other actions. Gorman v. Milliken, 86 N. Y. Supp. 699; Blanton v. Dold, 109 Mo. 64; Nat. Biscuit Co. v. Wilson, 78 N. E. 251; Solarz v.

Railroad, 29 N. Y. Supp. 1123 (affirmed, 155 N. Y. 645); The Wm. Branfoot, 48 Fed. 916; Posey v. Scoville, 10 Fed. 140; Sackewith v. Biscuit Co., 78 Mo. App. 144; Shuler v. Railroad, 87 Mo. App. 618; Snyder v. Elect. Co., 43 W. Va. 668; Highland Bay Co. v. Pouch, 124 Fed. 148; Griffen v. Manice, 166 N. Y. 195; Dean v. Railroad, 97 S. W. 910. (2) But there was also direct testimony to prove negligence of defendant as alleged. The undisputed testimony of the experts proves that such a shock or "explosion" as here is shown, was not ordinary or usual in the employment, but that it necessarily resulted from negligence charged in omitting the duty of inspection to discover the obvious defective condition of the electrical machinery. Such a dangerous agency as electricity demands care in its use by the master, affected by the circumstances. Reasonable care toward employees requires that the machinery should be inspected occasionally, and be maintained in a condition precluding such an "explosion" as here appears. Geisman v. Elect. Co., 173 Mo. 654; Alexander v. Light Co., 209 Pa. 571; Bradford v. Kizer, 113 Fed. 894; Railroad v. Lynch, 90 S. W. 511; Schoepper v. Chem. Co., 113 Mich. 582; Moran v. Engine Co., 21 R. I. 386; Thomas v. City, 97 S. W. 420. (3) The expert proof affirmatively indicates the cause of the "explosion" to be the defective condition of the controller, and want of necessary inspection to reveal and to correct that condition. The duty resting on the master was not performed in this case, according to the positive evidence, even beyond the reasonable inferences to be drawn from the facts of the "explosion" and its deadly force. Circumstantial evidence of the cause of such an "explosion" or injury as here appears is sufficient, and it need not exclude every other possible hypothesis. Delahunt v. Tel. Co., 215 Pa. 241; Railroad v. McDade, 191 U. S. 64; Rose v. Transpt. Co., 11 Fed. 438; Woodall v. Railroad, 78 N.

E. 446; Grimsley v. Hankins, 46 Fed. 400; Excelsior Co. v. Sweet, 57 N. J. L. 22.

BURGESS, J.—This is an action for damages for personal injuries, and was instituted by David W. Sills, the original plaintiff herein, against the defendant in the circuit court of the city of St. Louis. The venue of the cause, upon application of the plaintiff, was changed to the circuit court of Boone county, at the June term, 1904, of which court, upon trial had, a verdict and judgment in the sum of fifteen thousand dollars was rendered in favor of plaintiff. Defendant's motion for a new trial having been overruled, it appealed. Since the said judgment was rendered, David W. Sills, the original plaintiff, died, and the cause was revived by consent in this court in the name of his said administrator.

It is stated in the petition that on December 12, 1902, defendant was engaged in operating a system of electric railways in the city of St. Louis; that plaintiff was in the employ of defendant, and on the last-mentioned date had been assigned by defendant to duty as motorman, and plaintiff was engaged in his duties on defendant's car No. 1921, which was north-bound on Grand avenue, near the Grand avenue bridge, about 5:45 o'clock a. m., when a sudden explosion took place within the controller box of said car.

Said controller box was an appliance fastened to said car on the front platform. "It contained machinery used to apply and regulate and to cut off the electrical force which constituted the motive power of said car. Said machinery was hidden from view in said box and was operated by a controller-lever on the top (outside of said box). It was part of the duty of plaintiff as such motorman to manipulate said lever on said controller in order to set said car in motion and to regulate its momentum, and to stop said car,

as occasion might require, in the operation of said car, for the purposes of defendant's business as a carrier of passengers on its said line of street railway. Plaintiff was then and there ignorant of the construction and interior arrangement of said machinery so used to operate said car, and plaintiff's duties as motorman for defendant did not require him to have any knowledge of said machinery within said box, but merely to move said controller as aforesaid in the operation of said car. Said explosion of said controller box on said day, December 12, 1902, was due to the omission of defendant to use reasonable and ordinary care to maintain said controller and the machinery within it, in a reasonably safe condition for use by plaintiff as motorman upon said car, as aforesaid, and to defendant's omission to use ordinary care to take reasonable precautions to have the operation of the electrical power in and upon said machinery ordinarily safe for employees, required to use same in the manner in which plaintiff was using said instrument as aforesaid at the time of said explosion, which manner of use was that necessarily incident to the duty of motorman on said car, then and there; and said injury to plaintiff was further due and directly ascribable to defendant's omission to use ordinary care to provide reasonably safe machinery for use in operating said motive power as aforesaid. Plaintiff avers that said appliance which exploded as aforesaid was defective and not reasonably safe, and such defective condition thereof at and prior to said explosion was wholly unknown to plaintiff, and could not have been discovered by plaintiff by the use of ordinary care on his part; but the said dangerous and defective condition of said machinery which exploded could not have been discovered by defendant by ordinary care in inspecting said controller prior to its explosion in ample time to have prevented said explosion.''

Plaintiff further states that by reason of said explosion he was immediately thrown from the said car into the street and sustained severe injuries.

The injuries and damages alleged to have been sustained by plaintiff as a result of the explosion are enumerated in the petition and include bodily injury, loss of time and earnings, a permanent impairment of earning capacity, liability for medical expenses and treatment, and plaintiff prays for judgment on account of such damages in the sum of thirty thousand dollars.

The answer was a denial of each and every allegation in plaintiff's petition contained.

The evidence showed that plaintiff, David W. Sills, was a motorman on one of defendant's street cars on the Bellefontaine line; that while in the discharge of his duty on the front platform of the car there occurred an explosion of the electrical controller thereon which was so violent that Sills was thereby blown or thrown entirely off the car and he fell upon the pavement or sidewalk on the Grand avenue bridge, over which the car was passing at the time. He was unconscious when picked up, after being thrown from the car. His left thigh bone was found broken, his right shoulder dislocated and the muscles torn between the elbow and shoulder. Three of his ribs were fractured, and he also sustained internal injuries as well as an impairment of his hearing. The left leg was permanently deformed and rendered an inch and a half shorter than the other leg. As results of his injuries he suffered great pain, and was also afflicted with nervousness, insomnia, loss of appetite and melancholia. Before he was injured he was in good health and had no deformity of any kind. He was twenty-eight years of age at the time of the accident, and was earning as motorman between twelve and fourteen dollars per week; he had been unable to resume work since the time he was injured.

Sills testified that he had no technical knowledge of the controller box or the electrical appliances on the car, and had received no special instruction from defendant or from any other source as to any machinery inside of the controller, except that he was shown by two of defendant's employees, before he began his duties as a motorman, "how to cut out the motor if one should break down." He received instruction as to the manipulation of the lever on top of the controller box by the moving of which to the right or left the speed of the car might be accelerated or retarded, and stated that on the top of the controller were marks or points which would indicate the extent of the power; that seven of such points were visible, and two not visible. When asked to state what happened when the so-called explosion took place, and what he did, he explained that the car, without any power on, had been going down hill from Chouteau avenue toward the bridge, and that as there was a rise as the bridge is approached the car begins to check up. "As it began to check up I began to put the power on at the regular rate, and about the time I hit the fifth point I could tell then that something was wrong, but it was so quick I don't know anything about how I got off or anything, only that I was picked up on the bridge. I knew enough to know that I was shocked, and that was all. The car had shocked me a number of times before that, after we came from the sheds, but not strong enough to knock me down." He was asked to state what he saw, if anything, in the way of arcing or any display in the way of an explosion, and he replied: "It was so quick I didn't see anything. In fact, I hardly realized anything of it. I have a slight remembrance of a flash of light as I got the shock, but that was all." Witness said that he had been in the employ of the defendant company about three months, and was not confined to the us of any one particular car; that the motorman didn't

have anything to do with the machinery of the car, or the car itself, after the daily run was finished and the car was returned to the shed. Being asked to state what method of inspection or examination of the controller boxes existed in the car shed from whence he took his car on the morning of the accident, witness answered: "The only inspection system I saw there was, where a car had to be fixed, where it had a bad break, the light wire was bad, or anything was wrong when you got done with it and was ready to put it away for the night, you marked on a book showing what was the matter with the car. That is the only inspection system I knew of." The motorman, he said, would write down what was wrong with the car on a book in the office after bringing the car in for the night, which book was expressly provided for that purpose. He had experienced, as motorman, some slight shocks before, and at one time, as the result of a shock, he lost hold of the lever in going over a switch; that he was knocked over for two seconds perhaps, but that was all; that he had received on the morning of the accident some slight shocks on the way down to the Grand avenue bridge, but that he did not stop to examine into the cause as the motormen were not allowed to do so; that motormen on street cars frequently receive shocks of that kind while operating the cars, and that sometimes they pay attention to them, and sometimes not. He did not notice that morning, prior to the time of the accident, any arcing or flame about the motor, only that there was a little puff of smoke at one time.

After plaintiff was injured he was taken to the city hospital, at St. Louis, where he was treated by Dr. Culbertson. He stayed there nearly three weeks, and was then taken to the St. Louis Hospital, and treated there by Dr. O. C. Raines. He remained at the latter hospital from New Year's day till March 23, and then removed to 1616 Franklin avenue, where he continued

to receive medical treatment, and was still under treat-
ment at the time of the trial. Plaintiff belonged to a
hospital association, and by reason of his member-
ship therein his expenses for medical treatment at the
St. Louis Hospital amounted to but fifty cents a month.
He was charged nothing at the City Hospital. For
medicines which he obtained at drug stores he paid
eight or ten dollars.

Dr. Raines, who had been treating the plaintiff,
testified at the trial and explained the nature of plain-
tiff's injuries, some of which he regarded as perma-
nent, and stated that the injury of his ribs would ren-
der him susceptible to lung and other pulmonary
trouble. The reasonable value of his medical and sur-
gical services to Mr. Sills, including the hospital treat-
ment, was, he said, about $226.

Herman F. Pabish testified for the plaintiff, and
stated that he was an electrical and mechanical engi-
neer, and was in the employ of defendant, about the
20th of December, 1902, and had been so employed since
the organization of the company, about four years be-
fore that time; that he was acquainted with the mechan-
ism of the controller and the connection by which the
electric power was applied to the motor of said cars;
that the defendant was using different kinds of con-
trollers, one being manufactured by the General Elec-
tric Company, and the other by the Westinghouse, and
that all controllers were of the same general character.
Witness identified a picture of a controller in use by de-
fendant, and by means thereof illustrated and explained
to the jury how the electrical force was applied, in-
creased or diminished. The conditions present at the
time when plaintiff was injured were embraced in a
hypothetical question put to the witness, who was asked
to state what would cause a disturbance or explosion
similar to that mentioned as having occurred when
plaintiff was hurt. His answer was that it might be

caused by dirt, water or grease, or any other foreign substance almost, in the controller, and he expressed the opinion that, in order to keep the controllers in good condition, the door or part of the casing of the controller should be opened up every day, and the mechanism cleaned. He further stated that it would be a mere accident if an explosion should occur in the controller through an increase of the voltage from the amount usually carried, and that if there was a defect in the controller not detected at the factory, or if it had been used for a long time, an explosion or arcing might occur if the voltage of the electric current were increased beyond the actual capacity; that if there was but a slight imperfection in the condition of the machinery from dirt or other foreign substance being there, or if the contacts were imperfect, and the full extent of the mill voltage turned on, it would be more likely to produce arcing and a severe shock than if the conditions were perfect as to machinery and points of contact. Witness could not say just what did cause the particular arcing on the occasion of the accident, and all he could do would be to enumerate a list of things that might have caused it; but stated that such a disturbance as that occurring when plaintiff was injured could not have happened if the voltage supplied by the electrical current had been normal in quantity and quality and the controller in perfect order in regard to contact, cleanliness, etc. He further stated that the makers of such machinery have been unable to make it absolutely perfect, and that accidents and derangements take place from time to time in spite of all they can do. Witness did not know the practice of the defendant with regard to the examination of these instruments on the cars that run on the line of street railway where plaintiff's employment took him at that time, as witness was then located at another place working for the defendant.

Plaintiff read in evidence the deposition of Owen Ford, which deposition had been taken for and on behalf of defendant. Mr. Ford first qualified to speak as an electrical expert. His testimony with respect to the electrical appliances in use on defendant's cars, the handling of electricity and its use in the operation of cars, was practically the same as that of witness Pabish. He said that there was no way by which the motorman could control the amount of current that reached the controller box, his control being limited to its application to the motive power of the car, and that explosions occur at infrequent intervals in spite of all and every precaution that might be taken to prevent them. Witness never knew of an explosion occurring in a motor-box of sufficient force to break the metal of the box, or to injure the operator or motorman.

At the close of plaintiff's evidence defendant offered an instruction in the nature of a demurrer to the evidence which the court refused to give to the jury, to which action of the court defendant duly excepted.

The defendant offered no evidence, but stood on plaintiff's case.

At the instance of plaintiff, and over the objection and exception of defendant, the court instructed the jury as follows:

"1.  The court instructs the jury that if you believe from the evidence that on December 12, 1902, plaintiff was in the employ of defendant as a motorman on a car of the Bellefontaine line, and that while plaintiff was operating the machinery in his charge as motorman on the front platform of said car, an explosion took place within the controller box on said platform, and that in consequence of said explosion plaintiff was thrown from said car and severely injured; and if you further believe from the evidence that the injuries which plaintiff received as aforesaid were directly caused by negligence (that is to say, by want of

ordinary care) on the part of defendant, in the particulars mentioned in the next two instructions of the court, and that plaintiff was using ordinary care for his own safety and in other particulars, at and before the time of said explosion, then your verdict should be for the plaintiff.

"2. The court instructs the jury that if you find from the evidence that an explosion took place as mentioned in the first instruction, and that it was directly caused by the failure of defendant to use reasonable care in procuring and using a reasonably safe controller, or that it was directly occasioned and caused by the failure of defendant to exercise ordinary care to inspect said controller, and to use reasonable care to discover its condition, and that defendant by the exercise of reasonable care in so inspecting said controller, could have discovered its dangerous condition (if you find from the evidence it was in such condition) and averted the injury to plaintiff, and that defendant in failing to use reasonable or ordinary care as aforesaid was negligent and thereby failed to use reasonable care to furnish to plaintiff reasonably-safe machinery for use by him as motorman on said car, then defendant was guilty of negligence within the meaning of the first instruction of the court.

"3. The court instructs the jury that if you believe from the evidence that an explosion took place, as mentioned in the first instruction of the court, and that it was directly caused by the omission of defendant (by its agents and servants) to use reasonable and ordinary care to provide electrical machinery which should be reasonably safe for use by a motorman on duty on said car, and that said electrical machinery within said controller box was not within view of the plaintiff and that plaintiff could not, and did not, know its condition, by the exercise of ordinary care on his part, and that plaintiff was not required by defendant to acquaint

himself with the nature and operation of said machinery within said controller box, and that the explosion mentioned in the first instruction of the court (if you find it took place) occurred because of defendant's previous omission and failure to use reasonable care to have said electrical machinery inspected and maintained in a condition of reasonable safety for use by a motorman on duty on said car, in the situation and circumstances of plaintiff as shown by the evidence, then the defendant was guilty of negligence within the meaning of the first instruction of the court.

"4. The court instructs the jury that by the term 'ordinary care' and 'reasonable care' (as those terms appear in the instructions in this case) the court means that amount or degree of care which a person of ordinary prudence and caution (according to the usual and general experience of mankind) would exercise in the same situation and circumstances as those of the person or persons mentioned in this case, who were required by law to exercise ordinary or reasonable care as stated in the instructions of the court; and the failure or omission of said person or persons to use such care as is above defined was negligence, in the sense in which that term is used in the instructions of the court.

"What constituted reasonable or ordinary care, as above described, is to be determined upon a full view and consideration by the jury of all facts and circumstances of each particular event or situation pointed out in instructions of the court in connection with the terms 'ordinary care' or 'reasonable care.'

"5. The court instructs the jury that the question whether or not plaintiff was guilty of any negligence, in the circumstances shown by the evidence, is not an issue in this case.

"6. The court instructs the jury that if, under the evidence and other instructions of the court, you de-

206 Sup—28

cide to find in favor of the plaintiff, you should assess his damages at such an amount as you believe from the evidence to be a reasonable compensation for any physical and mental pain and suffering which you believe from the evidence plaintiff endured as a direct result of said injury or injuries as you find from the evidence plaintiff received by reason of said explosion, and for any expense paid by plaintiff on account of the reasonable value of such medical care and treatment, as you may believe from the evidence became necessary to plaintiff in consequence of said injury or injuries, as well as a reasonable compensation for the value of any loss of time or earnings which you may believe from the evidence plaintiff has suffered as a direct result of said injury, and also a reasonable compensation for any permanent injury (if any) which you may find from the evidence to have resulted to plaintiff as a direct consequence of the said injury or injuries to plaintiff, but the total amount of damages awarded to plaintiff in your verdict may not exceed the amount of $30,000, which is the sum claimed by plaintiff in his petition.''

At the request of defendant, and over the objection and exception of plaintiff, the court gave the following instructions:

''1. The court instructs the jury that defendant did not insure the safety of plaintiff, nor the safety of the controller in use on defendant's car. Defendant was only required to use reasonable care and foresight in procuring and using a reasonably-safe controller.

''2. The court instructs the jury that they cannot find for the plaintiff merely because they may find that there was an explosion in the controller box and that plaintiff was thereby thrown from the car and injured. Nor can the jury guess at the cause of the explosion or surmise that the defendant was negligent. But the law requires the plaintiff to prove to the rea-

sonable satisfaction of the jury that the explosion in the controller box was due to some defective or unsafe condition of such controller and that the defendant by the exercise of reasonable care could have discovered such defect or unsafe condition and removed the same in time to have prevented the accident.

"3. You are instructed as a matter of law that defendant was not required to furnish plaintiff with an absolutely safe controller; nor was defendant required to furnish the latest, most approved or safest controller known or in use, but the law only required defendant to exercise ordinary care to furnish plaintiff a reasonably-safe controller and to exercise ordinary care to keep the same in repair.

"6. In accepting employment in the service of defendant for the performance of the work stated in his petition plaintiff assumed all of the ordinary dangers and hazards pertaining to such work; and should the jury find from the evidence that the injury sustained by plaintiff was the result of an accident, and not the negligence of defendant as explained in other instructions, liable to occur in the performance of the work plaintiff was engaged in at the time of said accident but was a risk incident thereto, then the plaintiff cannot recover and the jury should find for the defendant.

"7. The court instructs the jury that if they are unable to determine from the evidence whether or not the defendant, by the exercise of reasonable care, could have discovered any defects or unsafe condition in the controller box and its appliances, then they cannot find the defendant guilty of negligence in respect to the condition of said controller box."

The general rule of law is that the master must use ordinary and reasonable care to supply and maintain safe machinery, tools and appliances with which to do the master's work; but the master is not required to furnish his servant machinery, tools and appliances

which are absolutely safe; nor can an employer be held guilty of negligence in the failure of the discharge of his duty towards his servant where he furnishes machinery and appliances which are reasonably safe when used in the manner intended to be used, but which may become dangerous if used for a purpose for which they were not intended or adapted. [Grattis v. Railroad, 153 Mo. 380.]

The case was submitted to the jury upon the theory that a case of negligence was made out against the defendant if the jury should believe from the evidence that the defendant had failed to use reasonable care in procuring and using a reasonably-safe controller, or that defendant failed to exercise ordinary care to inspect the controller which was in fact procured, when by the exercise of reasonable care in making inspections defendant might have discovered the dangerous condition of the controller, if it was dangerous.

Defendant insists that in support of these issues there was no substantial evidence, or evidence sufficient to justify the submission of the case to the jury. Upon the other hand, the plaintiff contends that the evidence that the controller "exploded" because it was not duly inspected, and that it was not in a reasonably safe condition, is direct and pointed, but that even if the experts had not testified, the inference of negligence on the part of the defendant, under the circumstances, was cogent and persuasive.

The evidence showed that the controller boxes in use by defendant on its cars on the date when plaintiff was injured were what are known as the General Electric or Westinghouse controller boxes, and that they were at the time of the accident the best on the market.

While there was evidence tending to show that any foreign substance in the controller, such as dirt, water or grease, might produce arcing, that is, a slight

flash or explosion, which might be prevented by inspection, there was no evidence of a failure by defendant to inspect the controllers in use as often as was seemingly necessary. So that it is not shown by the evidence that the defendant failed to use reasonable care in procuring for use on its cars a reasonably safe controller. Upon the contrary, the evidence shows that the controller which exploded and caused the injury was the "best on the market." The master is not required to furnish his servant absolutely safe appliances or machinery with which to work, but discharges the full measure of his duty towards his servant when he exercises ordinary and reasonable care to supply and maintain safe machinery, tools and appliances with which to do the master's work. [Minnier v. Railroad, 167 Mo. 99; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Holmes v. Brandenbaugh, 172 Mo. l. c. 64; Tabler v. Railroad, 93 Mo. 79; Grattis v. Railroad, 153 Mo. 403.] This duty, however, does not make the master an insurer of the safety of the servant. [Grattis v. Railroad, supra.]

It is asserted by plaintiff that "the expert proof affirmatively indicates the cause of the explosion to be the defective condition of the controller, and want of necessary inspection to reveal and to correct that condition; that the duty resting on the master was not performed in this case, according to the positive evidence, even beyond the reasonable inferences to be drawn from the facts of the explosion and its deadly force; that circumstantial evidence of the cause of such an explosion or injury as here appears is sufficient, and it need not exclude every other possible hypothesis."

We are unable to agree that the expert proof affirmatively indicates the cause of the explosion to be the defective condition of the controller, or the want of necessary inspection. These were facts which it devolved upon plaintiff to prove, or to prove a state

of facts from which they might reasonably be inferred. Delahunt v. Tel. Co., 215 Pa. St. 241, is relied upon by plaintiff as sustaining his position; but in that case there was positive evidence of defendant's negligence in permitting its wire, which was not properly insulated, to come in contact with the wires of another company, heavily charged with electricity, whereby the electric current was conveyed to the telephone of the deceased, when he was making proper and lawful use thereof, and in consequence of the negligence of the defendant company deceased received a heavy shock of electricity and was killed.

It is true that in Grimsley v. Hankins, 46 Fed. 400, it is held that a steamboat boiler explosion, causing injuries, is prima-facie evidence of negligence on the part of the owners and officers; but it is also held that this may be rebutted by evidence showing due diligence in supplying suitable machinery. From the evidence in the case at bar, it is indisputable that the controller was of the best.

In the case of the Excelsior Electric Co. v. Sweet, 57 N. J. L. 224, the general rule is held to be that the occurrence of the accident does not raise the presumption of negligence, but when the testimony which proves the occurrence by which a person is injured discloses circumstances from which the defendant's negligence is a reasonable inference, a case is presented which calls for a defense. In our view, there were no circumstances disclosed by the evidence in this case from which negligence on the part of the defendant, either in the selection of the controller or the inspection of it, can reasonably be inferred.

Another case relied upon by plaintiff is Rose v. Stephens, 11 Fed. 438. That was a suit by a person who was injured by the explosion of a steam boiler used by the defendant to propel a vessel chartered by the defendant to be used for the transportation of pas-

sengers and freight. It was held, when an accident happens as by the bursting of a boiler, in the absence of explanatory circumstances, negligence will be presumed, and the burden is cast upon the owner to disprove it.

In discussing the same subject in the case of Transportation Company v. Downer, 78 U. S. 1. c. 134, it is said: "There was no presumption, from the simple fact of a loss occurring in this way, that there was any negligence on the part of the company. A presumption of negligence from the simple occurrence of an accident seldom arises, except where the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it in similar cases, or where it is caused by the mismanagement or misconstruction of a thing over which the defendant has immediate control, and for the management or construction of which he is responsible."

The rule announced in these cases only applies when the affair speaks for itself. "It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but, in these cases, the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer. The accident, the injury, and the circumstances under which they occurred, are in some cases sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing his freedom from fault. In the words of Baron Channell, 'where it is shown that the accident is such that its real cause may be negligence of the de-

fendant, and that whether it is so or not is within the knowledge of the defendant, the plaintiff may give the required evidence of negligence without himself explaining the real cause of the accident, by proving the circumstances, and thus raising a presumption that, if the defendant does not choose to give the explanation the real cause was negligence on the part of the defendant.'" [1 Shearman & Redfield on Negligence (4 Ed.), sec. 59.]

In Tuttle v. Railroad, 48 Iowa l. c. 239, it is said: "It is true that where a dangerous accident occurs which, under ordinary circumstances, would not have happened had the defendant and its employees exercised due care, prudence and watchfulness, proof of such an accident, with its attendant circumstances, raises a presumption of negligence, and the burden of proof is then cast upon the defendant to rebut this presumption. To this end defendant must show that in the selection and operation of the machinery which caused, or contributed to, the accident, it used due care, prudence, skill and watchfulness. This is as far as, upon any well-recognized legal principle, the burden of proof can be cast upon the defendant, and is as far as any adjudication, to which we have been referred, has gone."

This rule, however, has no application to the case at bar, for the reason that plaintiff alleges in his petition specific acts of negligence on the part of the defendant, in that "the dangerous and defective condition of said machinery which exploded could have been discovered by defendant by ordinary care in inspecting said controller prior to its explosion in ample time to have prevented said explosion." This question was submitted to the jury by plaintiff's instruction, and thus plaintiff assumed the burden of establishing the allegations of the petition. [Dowell v. Guthrie, 116 Mo. 646; Yarnell v. Railroad, 113 Mo. 570.]

The general rule is that the burden rests upon the plaintiff to prove the negligence of the defendant as alleged in the petition, and that such negligence was the proximate cause of the injury. "In other words, negligence is not presumed, but must be proved. The difficulty of proving the negligence charged does not affect the principle." [6 Thomp. on Law of Neg., sec. 7695; Miller v. Railroad, 186 Pa. St. 190.]

We are firmly of the opinion that the doctrine of *res ipsa loquitur* is not applicable to the facts in this case. This, we think, is clearly demonstrated by the opinion of the St. Louis Court of Appeals in the case of Breen v. St. Louis Cooperage Co., 50 Mo. App. 202. Judge ROMBAUER, speaking for the court, said:

"In Jones v. Yeager, 2 Dillon 68, the injury was the result of a boiler explosion. Judge DILLON, after briefly stating the well-known rules of law governing the master's liability in such cases, charged the jury as follows: 'In the application of these principles to the evidence, you will first inquire whether the boilers in this case were unsafe or unfit for use, and, if so, whether the defendant knew it, or as a reasonable man, having a due regard for the safety of his employees, ought to have known it; for, if he ought, his neglect in this respect would be equivalent in imposing liability to actual knowledge; and in the next place you must inquire, and, in order to hold the defendant liable, must find from the evidence, that this defect was the direct and immediate cause of the accident, without which it would not have happened; and, if you thus find, then the defendant would thus be liable.' That charge was given in a case where there was ample evidence tending to show that the boiler which burst was weak and worn, and expert evidence tending to show that it burst owing to such weakness. This clearly shows that the rule of *res ipsa loquitur* cannot be applied with any sense of reason to a case of complicated machinery,

nor can the jury, from the mere fact that some defect exists in some part thereof, conjecture not only that such defect was the direct and immediate cause of the accident, but also that it was the duty of the defendant to foresee such conjectural result and guard against it. The employer fulfills his duty by guarding against the probable result of defects, even if such defects are shown. Holding him responsible for conjectural results shifts his liability from the ground of negligence to that of insurance.

"I have examined many cases on this subject, but find none sufficiently analogous in its facts to the present case to furnish a precedent of any value. Touching the law there is very little difficulty, but touching its application to the particular facts in this case the difficulty is great. That it is not for the defendant to account for the accident on a theory consistent with due care, but that it is for the plaintiff to account for it on a theory inconsistent therewith, all the cases concede. That such theory must not rest upon bare conjecture, but must rest either upon direct proof, or upon proof of facts establishing a direct and immediate connection between the defects and accident complained of by logical inference, is equally conceded.

"The cases which probably come nearer in their facts to those of the present case are Searles v. Railroad, 101 N. Y. 661, and Dobbins v. Brown, 119 N. Y. 188, in both of which verdicts were set aside on appeal as resting not on legitimate inference, but on bare conjecture. In the first, the cause of the injury was a cinder which had lodged in the plaintiff's eye. Judge EARLE, in delivering the opinion of the court, said: 'Where the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which the defendant is responsible, and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the

former cause, and he must fail, also, if it is just as probable that they were caused by one as by the other, as the plaintiff is bound to make out his case by a preponderance of evidence. The jury must not be left to mere conjecture, and a bare possibility that the damages were caused in consequence of the negligence and unskillfulness of the defendant is not sufficient.' In the second case, the cause of the accident was the precipitation of the plaintiff's intestate from a bucket while descending a mine. The evidence showed that the cable attached to the bucket was broken after the accident, but there was no evidence how it came to be broken. RUGER, C. J., in delivering the opinion of the court, said: 'The trial court, in its charge to the jury, authorized them to infer that the accident might have happened from the accidental stoppage of the dummy yoke or follower at some point in the course of its descent, and its sudden fall thereafter, from a great distance, on the bucket. Any inference that the accident happened in the manner suggested would, it seems to us, have been substituting conjecture for proof, and violates the rule requiring proof always to be made the basis of recovery.'

"In Callahan v. Warne, 40 Mo. 136, Judge HOLMES says: 'Negligence is something invisible, intangible, and, for the most part, incapable of direct proof, like sensible facts or physical events. It is, in general, a matter of inference from other facts and circumstances which admit of direct proof, and which may raise a presumption of the truth of the main fact to be proved. These facts and circumstances must be such as would warrant a jury in inferring from them the fact of negligence by reasoning in the ordinary way, according to the natural and proper relation of things and consistently with the common sense and experience of mankind.' In Smith v. Railroad, 37 Mo. 292, the same judge says: 'It is not enough that a part of

the facts involved in the injury are made to appear. The whole issue must be proved, and the burden of proof is upon the plaintiff. If he failed to prove the whole issue, he comes short of making out a prima-facie case, and the jury should be instructed to find a verdict for the defendant.' ''

That the controller in question was a very complicated piece of machinery is clearly shown by the evidence, and brings the case squarely within the principles announced in the next preceding case. The evidence shows that anyone of numerous causes might have brought about the explosion, among which causes was the accumulation of dirt in the controller. Such dirt might have gotten into the controller at any time while the latter was in charge of the plaintiff while on the track, without any fault or negligence on the part of defendant and the explosion have occurred before defendant had any opportunity to inspect the controller; so that the cause of the explosion was purely theoretical and conjectural, and no judgment should be permitted to stand with no foundation whatever for its support.

Other points are insisted upon by appellant for reversal, but as the conclusion reached disposes of the case, we deem it unnecessary to pass upon them.

The judgment is reversed. All concur.