GEORGE R. STEWART, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.—30 S. W. (2d) 1000.

Division One, September 4, 1930.

294

*Neale & Newman* for appellant.

*E. T. Miller* and *Mann & Mann* for respondent.

LINDSAY, C.—The trial court sustained defendant's demurrer to plaintiff's amended petition. Plaintiff refused to plead further, and appealed from the judgment entered upon the demurrer.

The sufficiency of the petition to state a cause of action is the sole question in the appeal. The petition is as follows:

"Plaintiff for his cause of action against the defendant and for his second amended petition herein alleges that the defendant is and was at all times hereinafter mentioned a railroad corporation organized and existing under and by virtue of the laws of the State of Missouri, with a line of railway extending in and through the

counties of Dade, Greene, and various other counties in Missouri and in and through other states than Missouri.

"That the defendant at all times hereinafter mentioned owned and operated certain car shops at Springfield, Greene County, Missouri, in which car shops the plaintiff was at all times hereinafter mentioned employed as a steel worker; that while so employed at said place, on or about the —— day of August, 1925, plaintiff was ordered by defendant's foreman in charge of the work which plaintiff was then and there doing and under whom plaintiff was then and there working, to drill certain holes at the upper part of the end of one of defendant's box cars, by the use of a pneumatic air drill, which drill is operated by the use of compressed air.

"That it was the duty of the defendant to furnish plaintiff with good and reasonably safe and sufficient tools or machinery for that purpose, and to see that the tools or machinery so furnished to plaintiff for such work were in reasonably safe condition; but that the defendant furnished to the plaintiff a certain pneumatic air drill which is constructed of iron and steel and heavy metal parts including a certain motor composed, as plaintiff is informed and verily believes, of cylinders, pistons, shafts, rods, and of various other parts which plaintiff is unable to more accurately describe, connecting the said cylinders, pistons, shafts and rods with certain bits and with a compressed air tube and tank, which machinery operates the said bits in a rotary or boring manner; that the said pneumatic drill is controlled and operated by a certain hand throttle which throws it in and out of gear, thereby connecting the power of the said compressed air to the said bits; that the said drill contains and is operated by highly compressed air which exerts great force upon said bits, and which if unrestrained would escape with a great and dangerous force.

"Plaintiff further says that he was not and is not acquainted with the mechanical construction of said drill and does not know or understand the exact manner of its operation, nor the exact manner in which the said compressed air is restrained and held in check, and that after due diligence and inquiry he has been unable to ascertain such facts; that although he has since requested defendant for permission to inspect said drill defendant has failed to submit the same to plaintiff for inspection; that on or about the —— day of August, 1925, the said compressed air drill was in the complete control of the said defendant, its agents, servants and employees, and that the defendant then and there and now has within its personal knowledge all the parts and workings of the said machinery. Plaintiff further states that on or about the —— day of August, 1925, while he was engaged in operating the said drill and while he was using due care and caution for his own safety and was operating said

drill in a normal and proper manner, the said air suddenly and without warning exploded and escaped therefrom and blew into plaintiff's right eye with great force and violence, carrying with it certain parts of dirt and steel, thereby seriously and permanently injuring said eye.

"Plaintiff further states that his duties connected with said machinery were merely the duties of an operator; that he did not have charge of the care and keep of the said machine, and is ignorant of the details of the construction of the said machine, and has no knowledge or means of knowledge of the cause or causes that operated to bring about the said extraordinary action of said machine in permitting the said air to explode and escape as aforesaid; that said information is entirely in the possession of the defendant and of the defendant's agents, servants and employees in charge of the upkeep of the said machine, and that the said explosion and escape of air, as aforesaid, in the manner hereinbefore described, was directly due and directly caused by negligence on the part of the defendant.

"Plaintiff further alleges that as a direct result of the injury to his eye, as aforesaid, he has suffered great physical pain and mental anguish; that the vision of his eye has been permanently impaired and practically destroyed; that he has expended sums of money for medical attention and in the future will be forced to spend sums of money for further medical attention.

"Plaintiff further says that his injuries aforesaid were the direct and proximate result of the negligence and carelessness of the defendant, its agents, servants, and employees, as aforesaid, in furnishing plaintiff the tools with which to work, as aforesaid.

"Wherefore, plaintiff says that by reason of the premises aforesaid he has been damaged in the sum of nine thousand nine hundred and seventy-five dollars, for which sum together with his costs he prays judgment."

Counsel for appellant say the petition is bottomed squarely on the rule *res ipsa loquitur*. The sole question for decision as the case is presented by counsel for both parties is whether the petition states sufficient facts to constitute a cause of action under that rule. Taking the allegations as true, and taking the pertinent parts of the petition, they charge that plaintiff was a steel worker; that he was ordered by defendant's foreman to drill holes in the end of a box car; that for that purpose he was furnished a drill operated by highly compressed air, coming from a tank, through a tube connected with various mentioned parts not definitely described, and operating finally upon a bit, causing the bit to rotate; that the air was dangerous if permitted to escape in an unrestrained way; that the upkeep and care of the machine was in charge of defendant, and plaintiff's only duty was to operate it; that it was set in opera-

tion or thrown out of gear, by use of a hand throttle; that while plaintiff was operating the machine in a "normal and proper manner" and in the exercise of due care for his own safety, the air suddenly exploded and escaped with great violence and in such manner as to cause particles of · dirt and steel to be blown into plaintiff's eye. The allegation is that such explosion and escape of air was directly caused by negligence on the part of defendant; then, after description of the alleged injuries, there is the allegation that said injuries were the direct and proximate result of negligence of defendant, its agents and employees, in furnishing plaintiff with the aforesaid tools with which to work; but there is no allegation that the particular drill furnished was defective, or was of a pattern not in general use for the purpose mentioned. Plaintiff disclaims knowledge of the mechanical construction of the drill, the exact manner of its operation, and of the exact manner in which the compressed air is restrained and held in check; avers he has been unable to ascertain such facts, that permission to inspect the drill was denied by defendant; that the information as to the cause that operated to bring about the extraordinary action of the machine in permitting the air to explode and escape, is entirely in the possession of defendant.

Taking another view of the petition, we find it charges that it was the duty of the defendant to furnish plaintiff with good and reasonably safe and sufficient tools and machinery for the purpose of doing the drilling, and to see that such tools or machinery were in a reasonably safe condition. Then, after a description of the machine, and allegation of its operation by compressed air, it is charged that the compressed air if unrestrained, would escape with great and dangerous force. Next, plaintiff alleges the operation of the machine by him on the day of his injury, and that the air suddenly and without warning exploded and escaped from the drill and injured him. Connecting these with the charges of negligence: There is the charge of negligence on the part of defendant in furnishing the plaintiff a machine which was operated by the power of compressed air, which would be or was dangerous, if the escape of the air was unrestrained; and the other charge that upon the occasion of plaintiff's injury the air did suddenly explode or escape, causing injury, and that this explosion or escape of the air was due to defendant's negligence.

The plaintiff does not plead inexperience in the use of the machine, or, that he was required to operate it without first being given instructions as to its proper use. He does not allege that there was no device for holding the air in check, or that there was one which was defective; but, he alleges that the highly compressed air was dangerous if unrestrained, and that he does not know the *exact manner* in which the compressed air was restrained and held in check.

Yet, he connects this with the allegation that he was operating the machine in a normal and proper manner. The petition describes the compressed air as being in a tank, and as being released, or set into operation, by moving a hand throttle. But, he does not connect the air in the tank, or its movement from the tank, with any force or activity outside of the tank, other than its release by use of the hand throttle. As the petition describes it, the source of the compressed air is the tank; and the air, passing through the tube, operates ultimately upon the bit. He does not plead that there was no means of regulating or restraining its force, or, that if there was a means or device for that purpose, it was defective. As has been said, his plea that he did not and does not know the *exact manner* in which the air was restrained, is connected with his allegation that he was operating the machine in a normal and proper manner. There arises the question of how plaintiff could know he was operating the drill in a normal and proper manner, if he did not know the manner in which the air was restrained. His allegation that he does not know the exact manner in which the air was restrained cannot be accepted as tantamount to an allegation that there was no manner or means of restraining the air; but, his statement rather implies that there was some manner of restraining the air, and as to that, he says he does not know the exact manner.

There is no allegation in the petition that the machine was designed to operate in a certain way, in respect to control or restraint of the air; but, it is alleged that said drill "is *controlled* and operated by a certain hand throttle which throws it in and out of gear, thereby connecting the power of the said compressed air to the said bits." There is allegation that the air "exploded and escaped suddenly and without warning," and blew the particles into plaintiff's eye with violence. But, there is no direct allegation that the manner and force of the escape was unusual, and different from that which the machine was designed to produce. The only statement as to that, is contained in plaintiff's second allegation as to his want of knowledge—the allegation that he had "no knowledge or means of knowledge of the cause or causes that operated to bring about the said extraordinary action of said machine in permitting the said air to explode and escape as aforesaid."

In support of their contention that the petition states a cause of action under the rule *res ipsa loquitur*, counsel for plaintiff have cited a number of cases: Myers v. City of Independence, 189 S. W. 816; Taul v. Askew Saddlery Co., 229 S. W. 420; Blanton v. Dold, 109 Mo. 1. c. 74; Sackewitz v. American Biscuit Mfg. Co., 78 Mo. App. 1. c. 151-152; Stoher v. Ry. Co., 91 Mo. 514; Lee v. Ry. Co., 112 Mo. App. 1. c. 406, 407; Daugherty v. Mining Co., 207 S. W. 253; Eckhardt v. Wagner Electric Co., 235 S. W. 117; Johnson v. Street Ry. Co., 104 Mo. App. 1. c. 592; Prapuolenis v.

Goebel Construction Co., 279 Mo. 358; Kneemiller v. American Car & Foundry Co., 291 S. W. 506; Ferguson v. Fulton Iron Works, 259 S. W. 811; Miller v. Walsh, etc., 282 S. W. 141; Stroud v. Cold Storage Co., 285 S. W. 165; Kenyon v. St. Joe Ry., etc., 298 S. W. 246. Much stress is laid upon the decision of this court in Myers v. City of Independence, supra. In that case the plaintiff was an employee of the city, which owned and operated an electric light plant, and was directed by the superintendent of the plant to work upon certain wires at a place where there were a number of wires. While doing so, a wire with which he was in contact, became charged with a heavy current of electricity, and he was seriously burned. The negligence charged in the petition was the permitting of a deadly current to traverse the wires upon which the plaintiff was at work, without warning him, when defendant knew or might have known plaintiff was then working at the place mentioned. Otherwise, the petition charged generally that the plaintiff's injuries were caused by the negligence of the defendant. The charge of failure to warn was held not to charge specific negligence, but to be merely incidental to the negligence which permitted the current to traverse the wire. There was considered the question whether the petition was to be held good after verdict for plaintiff, and also the question whether there was evidence to sustain the verdict. The doctrine, *res ipsa loquitur*, was discussed, but the discussion is in an incidental way. The opinion shows, at page 821, that the defendant insisted that the judgment could not be sustained, without invoking the rule *res ipsa loquitur*, and also that the doctrine could not be invoked under the facts. This court held it was not necessary to invoke that doctrine to sustain the judgment, nevertheless, said "the reason of the doctrine represented by the phrase is pertinent to the evidence in this case." The evidence to which the reason of the doctrine was said to be pertinent, was evidence showing that the plaintiff's injury was caused by a current turned upon the wire known as the "arc wire" running from the power house to the place where the plaintiff was at work, and evidence of such facts and circumstances as made it inconceivable that the current was turned on this "arc wire," except through culpable negligence on the part of either the superintendent, the engineer or the foreman; and reference was made to the fact that the officials mentioned were in a department with which the plaintiff had nothing to do. Under this evidence, tending to show that the current was turned on from the power house, at a place fifteen blocks from where plaintiff was at work, and under circumstances about which he could know nothing, and concerning what was required of him in framing his petition, it was said 1. c. 820: "It was his [plaintiff's] duty to plead those things which were, in contemplation of law, within the scope of his cognizance." The doctrine, *res ipsa loquitur*, was held

to apply under the circumstances, and on the theory, that the turning on or permitting the current to be turned on the arc wire at the time, showed failure of the defendant to use ordinary care, "by demonstrating, that by the use of such means as was shown by the evidence to be usable and readily available, the injury in all probability would have been prevented." In that case the force which injured the plaintiff came from a source fifteen blocks away, over a wire run from the power house. In the instant case the plaintiff by his petition locates the power in a tank and its transmission thence through a tube to the appliance culminating in the bit was effected by the act of the plaintiff by the use of the hand throttle; and he says the drill is controlled and operated by the hand throttle; but as before stated his allegation is that he does not know the exact manner of the operation of the drill, and he does not know the exact manner in which the air is restrained and held in check. It would seem that if he knew the drill was controlled by the hand throttle, he was bound to know whether the hand throttle controlled, restrained or regulated the air pressure. He does not plead inexperience in the use of the machine, and it would seem that he must know whether the mere use of the hand throttle set in motion the full force of the air as it came from the tank, or, whether the force was subject to restraint or control by means of the hand throttle.

In Taul v. Askew Saddlery Co., supra (Kansas City Court of Appeals), the plaintiff was using a leather press machine which was set in operation by pressing a treadle, and was designed to perform one operation or revolution and not repeat that movement unless the treadle was again pressed. The machine repeated contrary to its design, and injured the plaintiff. The evidence for the plaintiff showed it was an old machine, and had repeated a number of times before the occasion of plaintiff's injury, and that this was known to the defendant. If the evidence for the plaintiff was accepted as true, it excluded the idea that the injury was caused by a defect of which defendant had no notice and which he had no opportunity to remedy. That case is one of many like cases where the injured party was operating a machine designed to perform a single operation, and upon the occasion of the injury unexpectedly operated contrary to its design. Eckhardt v. Wagner Electric Co. was a case of that character; so was also Kneemiller v. American Car & Foundry Co., supra, also Ash v. Printing Co., 199 S. W. 994, and Kitchen v. Schlueter Manufacturing Co., 20 S. W. (2d) 676; and there are others, wherein the injury was caused by the sudden and unexpected movement of a machine, contrary to what it was designed to do. Stroud v. Cold Storage Co., 285 S. W. 165, was a case where an elevator started unexpectedly and in an extraordinary manner; and Meade v. Mo. Water & Steam Supply Co., 318 Mo. 350, is another case where an elevator which was started

upward, and which was designed to ascend to the next floor and automatically stop, ascended part of the way, stopped and suddenly descended, injuring the plaintiff. All these were cases in which the injured party, a servant, was operating an appliance designed to perform a single certain operation, and no more, unless further caused to move by the servant, and nevertheless, made a movement contrary to its design, and the inference arose that the movement would not have occurred, except as the result of negligence of the defendant.

Counsel call special attention to Ferguson v. Fulton Iron Works, supra (St. Louis Court of Appeals). In that case the plaintiff was engaged in chipping rough metal projections from metal castings with an automatic air hammer containing a chisel. It was alleged that in its usual operation the hammer would not jump, catch and vibrate, but that if it did so, the operator could not control it and that it would be dangerous to the operator; that while plaintiff was using it cautiously and in the usual manner, it jumped, caught and severely vibrated, so that plaintiff could not control it, and pieces of metal were knocked off and thrown into and against the plaintiff's eye. General negligence was charged. The doctrine, res ipsa loquitur, was considered in connection with the facts shown upon the trial. It was shown that the speed at which the hammer acted was controlled or intended to be controlled by a trigger and valve. "There was a trigger which was pulled with the finger to operate and control the air" (l. c. 812). The defendant's principal contention in that case was that the doctrine did not apply, and upon the ground, that the evidence did not disclose any reason for the jumping and vibrating of the hammer constituting negligence on the part of the defendant. The court said the facts presented a very close question as to whether or not the rule could be invoked. The case was disposed of in part upon the theory that if the hammer was in working order the flying particles could be controlled and that there was evidence to show the hammer would get out of repair, and evidence tending to show that on the occasion mentioned it was out of repair, and the defendant knew or should have known of it.

To the writer the conclusion seems unavoidable, all the allegations considered, that the plaintiff knew whether the sole effect of turning the hand throttle so as to put the drill in operation was to release unrestrained, the full force of the air in the tank, or whether by a graduated use of the hand throttle the pressure was regulated, or was intended so to be regulated.

An examination of the cases between master and servant wherein the application of the rule was considered shows the greater number of them were determined in the light of the evidence shown on the trial; and in most of them, beyond the showing of the bare physical

cause of the injury, and the usual movement of the appliance causing the injury, many circumstances appeared in the evidence tending to show a departure of the appliance from what it was designed to do, and also a defect in it, and knowledge on the part of the defendant. The petition here fails to state a case within the class of cases wherein a machine, or an appliance, operated contrary to its design. In substance the plaintiff alleges he was operating an appliance furnished by defendant, driven by compressed air which was dangerous if the air was uncontrolled, and alleges that the air exploded and escaped with violence causing the injury complained of. He does not allege there was no appliance to restrain the air, or that there was one, and it was defective, nor does he allege any facts as showing what was the design or the usual movement of the machine when in operation, in respect to control of the air. He refrains from alleging there was a means of control, or that there was none, and contents himself with saying he does not know the exact manner in which the air was restrained and held in check. The scope of the rule, with its application under the facts in the particular case, is discussed in Blanton v. Dold, 109 Mo. 64; Beebe v. Transit Co., 206 Mo. 419; Klebe v. Distilling Co., 207 Mo. 480, 489, and in many other cases between master and servant additional to those heretofore referred to.

In Removich v. Construction Co., 264 Mo. 43, the question on appeal was the sufficiency of the petition. The prior decisions were reviewed. It was said to be a case in which the doctrine *res ipsa loquitur* was involved "in its strict and distinctive interpretation which allows a presumption of negligence to arise from the mere fact that an accident happened when coupled with the allegation of its bare physical cause wholly unassisted by circumstances tending to show any fault of omission or commission on the part of the master, as the responsible human cause of the accident in question." A review of the subject and of a multitude of cases arising in this and other jurisdictions may be seen in the annotation beginning at page 3, L. R. A. 1917E.

In Mayne v. Kansas City Rys. Co., 287 Mo. there is a general statement of when the doctrine applies, l. c. 248:

"Where the instrumentality which causes an injury is within the control of and operated by a party, and moves or operates in such a way that such motion or operation would not have happened except for some defect or negligent act, and injury to some person results, then the doctrine *res ipsa loquitur* applies, and a plaintiff suing for an injury so caused has only to show control of the instrumentality by the defendant and its usual movements. It is then for the defendant to explain, if it can, the casualty, so as to exclude negligence on its part. [Ash v. Woodward Printing Co., 199 S. W.

304

l. c. 997; Blanton v. Dold, 109 Mo. l. c. 75; Thompson v. Railroad, 243 Mo. 336, l. c. 354; Gibler v. Railroad, 148 Mo. App. 475, l. c. 484.]''

In the case at bar the plaintiff alleges control of the upkeep of the machine by defendant and its operation by himself, but, carefully refrains from alleging the usual movement of the machine, or of any appliance designed to control its movements, and while emphasizing his lack of knowledge, alleges he does not know the exact manner of control of the air. The petition, considering all that is alleged, and also what it fails to allege, fails to state a cause of action within the rule. The statement made in the opinion in Removich v. Construction Co., supra, seems applicable here upon the duty of this plaintiff. In that case, after statement of the lack of proper elements in the petition in that case, it was said, l. c. 57:

''Therefore, it was, we think, the duty of plaintiff to state such affirmative facts, touching the manner of the happening of the casualty, as to negative by fair inference the theory that it occurred by reason of some efficient defensive precluding as a matter of law the liability of defendant. This much we think, is due in a case, in fairness and candor to the courts, that they may not sit and fritter away time in doing vain and futile things; in trying alleged lawsuits wherein, if the conceded facts were candidly stated, it would instantly be seen that no cause of action lies.''

The judgment herein is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by HON. JAMES D. LINDSAY, our former Commissioner, is adopted as the opinion of the court. All of the judges concur.